## COMMISSIONER OF INTERNAL REVENUE v. STANLEY CO. OF AMERICA.

### No. 75, Docket 21666.

United States Court of Appeals Second Circuit.

Argued Dec. 6, 1950.

Decided Jan. 4, 1951.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson and Sumner M. Redstone, Sp. Assts. to Atty. Gen., Charles Oliphant and Helen Goodner, Washington, D. C., for petitioner.

Lawrence A. Baker, Washington, D. C., for respondent.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The question presented by this appeal is whether the Tax Court erred in holding that the Stanley Company realized no gain in exchanging its own mortgage bonds for a larger face value of mortgage bonds of another corporation. The facts were stipulated and may be briefy summarized: In 1928 Stanley-Davis-Clark Corporation, a Pennsylvania corporation, hereafter referred to as the Clark Company, purchased a theatre in Pittsburgh and issued a purchase money mortgage thereon to secure an issue of $2,400,000 first mortgage bonds maturing July 1, 1953. In August 1936 the Stanley Company, a Delaware corporation, submitted a letter to the bondholders containing the following proposal: Stanley Company will acquire title to the theatre premises, will place thereon a first mortgage dated July 1, 1936 and securing bonds of Stanley Company in the aggregate amount of $2,160,000, and will exchange these bonds pro rata for the $2,400,000 of Clark Company bonds outstanding; the proposal is not to become effective unless all the Clark Company bondholders accept it in writing and deposit their old bonds with the mortgage trustee; if they do so accept and deposit, the new bonds will be issued and delivered to the mortgage trustee for delivery to them within 60 days thereafter, and the Clark Company mortgage will then be satisfied of record. By October 15, 1936 all the bondholders had accepted the proposal and deposited their bonds. On December 9, 1936 Stanley Company, by merger with the Clark Company, its wholly owned subsidiary, acquired title to the theatre property; the new bonds were then delivered and on December 11, 1936 the Clark Company mortgage was satisfied in full and cancelled. As of December 9, 1936 the theatre property had a cost basis of $4,361,569.63, less a reserve of $462,633.23, and this basis was brought into the accounts of the taxpayer at the same value upon the merger. Neither of the merging corporations was insolvent prior to the merger, nor was the taxpayer insolvent after the merger and the exchange of its own bonds for the bonds formerly held by the bondholders under the Clark Company mortgage.

The taxpayer did not include in its income tax return for the taxable year ending August 31, 1937 any profit on the transaction above described. The Commissioner determined a deficiency based on the contention that the exchange of the old bonds for the new resulted in a gain of $240,000. A majority of the Tax Court decided against him.[1]

The Commissioner contends that the case is governed by United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131 and Helvering v. American Chicle Co., 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891. The

---

1. The decision was reviewed by the full Court and five of the judges dissented, but without opinion.

Tax Court distinguished those decisions on the theory that in the case at bar the taxpayer never became liable to pay the Clark Company's bonds. It reasons that because the Stanley Company agreed with the Clark Company bondholders *prior* to the merger it did not by the merger become liable to pay the $2,400,000 mortgage debt but only $2,160,000 of such indebtedness; therefore, when it issued the new bonds it discharged its own obligation exactly and not by paying a lesser sum, as did the taxpayers in the Kirby and Chicle cases. Hence the $240,000 difference is not a realized gain but affects only the basis for gain or loss on the theatre property, reducing it from what it would have been if the taxpayer had agreed to pay the full amount of the Clark Company's bonds.[2]

We are unable to agree with this view of the transaction. The bondholders' acceptance of Stanley Company's proposal created a unilateral contract which bound the Company to do three things: (1) to acquire title to the theatre—without specifying in what manner it should be acquired; (2) to deliver the new mortgage bonds to the mortgage trustee for delivery by it to the old bondholders pro rata; and (3) to cause the old mortgage debt to be cancelled and satisfied of record—for only thus could the new mortgage to be issued by Stanley Company become a first lien on the theatre property. When the merger was effected on December 9, 1936, thereby performing item (1) above listed, items (2) and (3) still remained to be performed. Until they were performed the old mortgage debt continued as a liability of the Clark Company and its liability became the taxpayer's by virtue of the merger statute.[3]

Consequently, even if the Kirby rule must be restricted, as the Tax Court thought, to a case where the taxpayer corporation satisfies at a discount a debt for which it is personally liable, the present case falls within the rule. That the debt owner's consent to accept the discount was acquired before rather than after the taxpayer became personally liable for the full amount does not seem to us a material distinction. Prior to actual performance the contract was merely an executory accord and the original mortgagor's duty to pay, to which the taxpayer succeeded by operation of law, continued in full force.[4]

If the transaction be approached from a less technical standpoint, one sees that the taxpayer has acquired assets formerly subject to a lien of $2,400,000 and by virtue of the contract with the merged subsidiary's bondholders has reduced the lien by $240,000. In the words of Mr. Justice Holmes in the Kirby case, 284 U.S. at p. 3, 52 S.Ct. at page 4, 76 L.Ed. 131: The result of the taxpayer's dealings has made available assets of $240,000 "previously offset by the obligation of bonds now extinct." This the Supreme Court says is a "clear gain." We cannot see that it should make any difference whether the taxpayer gets the reduction in the lien before or after he gets the assets themselves. In either case he *"realizes"* the gain only by freeing his assets from the burden of a lien. We need not now say that if a corporation buys up the bonds of another corporation at a discount and by a later disconnected transaction buys the latter's assets, the discount becomes a realized gain for income tax purposes. But when the acquisition of the assets and the purchase of the bonds at a discount are parts of a single transaction

---

2. In support of this conclusion the following cases were cited: American Seating Co. v. C. I. R., 14 B.T.A. 328; Fulton Gold Corporation v. C. I. R., 31 B.T.A. 519; Hotel Astoria, Inc., v. C. I. R., 42 B.T.A. 752, 759; Ernst Kern Co. v. C. I. R., 1 T.C. 249.

3. Section 2092 of the Code of Delaware provides that in case of a merger "all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said resulting or surviving corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." Under section 2091 a foreign subsidiary is permitted to merge with a domestic corporation and the properties of the subsidiary are transferred to the surviving corporation.

4. See Untermyer v. Bowers, 2 Cir., 79 F.2d 9, 11; Kromer v. Heim, 75 N.Y. 574, 578; A.L.I. Restatement of Contracts, §§ 417, 419.

we cannot doubt that the Kirby rule applies. See Houston Natural Gas Co. v. Commissioner, 5 Cir., 173 F.2d 461.

The decision is reversed and cause remanded for determination of income tax deficiency.