## HOUSTON NATURAL GAS CORPORATION (TEXAS) v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12274.

United States Court of Appeals
Fifth Circuit.
March 19, 1949.

LEE, Circuit Judge, dissenting.

———◇———

T. E. Kennerly, of Houston, Tex., and Ellsworth C. Alvord, Floyd F. Toomey, C. Rudolph Peterson and John P. Lipscomb, Jr., all of Washington, D. C., for petitioner.

Theron L. Caudle, Asst. Atty. Gen., Chas. Oliphant, Chief Counsellor, Bureau of Int. Rev., and Claude R. Marshall, Sp. Atty., Bureau of Int. Rev., both of Washington, D. C., and Geo. A. Stinson and Melva M. Graney, Sp. Assts. to Atty Gen., for respondent.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

This petition for review of the decision and order of the Tax Court, holding petitioner liable as transferee of Houston Natural Gas Corporation of Delaware, hereafter called "Delaware", presents the single, and on its face simple, question of law, whether, upon the liquidation of its subsidiaries in 1940, Delaware realized taxable income of $310,918.80, the admitted difference between the purchase price of the bonds of its subsidiaries and their face value.

The Tax Court, in an opinion [1] fully setting out the stipulated facts [2] and its rea-

---

[1] 9 T.C. 570.

[2] As material here they are:

Delaware was organized 11-19-28, and, at all times material, was the owner of all the issued and outstanding common stock of four Texas corporations, Houston Natural Gas Co., Texas Natural Gas Utilities, Gulf Cities Natural Gas Co., Tex-Mex Natural Gas Co., hereafter referred to as subsidiaries.

From 1928 to 1938, the subsidiaries in order to finance their operations had issued 15 year 6½% gold bonds, all of which were held by Delaware on July 31, 1940, having been acquired by it at a discount of $310,980.80. All of these stocks and bonds were pledged by Delaware with the Maryland Trust Co., trustee, as security for its own bonds

issued pursuant to a trust indenture executed on Dec. 1, 1928, with the understanding that Delaware was, under named conditions, to deposit with the trustee as additional security bonds of the subsidiaries. All amounts paid by the subsidiaries on the principal of their bonds was to be received by the trustee and used to purchase Delaware bonds.

Early in 1940, Delaware, which had registered as a holding company, adopted, and the Securities and Exchange Commission approved, a comprehensive plan for the simplification of its corporate structure, including the elimination of itself as a holding company. This plan contemplated the transfer of all the assets and properties of the

sons for so holding, upheld the commissioner's determination.

Petitioner does not question the conclusion that the difference between the cost of acquisition of the bonds and their value would, if realized, have been taxable gain.[3] Pointing, however, to the provision of Sec. 112(b) (6), I.R.C., 26 U.S.C.A. § 112(b) (6):

"Property received by corporation on complete liquidation of another. No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. * * *"

and to the fact that the liquidation in this case satisfied every requirement of the section, it insists that, contrary to the tax court's view, the transfer of the assets of this subsidiary was a distribution in liquidation under the section, and, therefore, without recognizable gain or loss.

The commissioner agreeing, as the tax court did, that the liquidation was a 112(b) (6) liquidation, and that no recognizable gain arose from the liquidation as such, urges upon us that this is wholly beside the point. The point he argues is that the gain was realized not from the liquidation as such but from the assumption by Delaware, and the payment and discharge of the bonds. It is thus plain that however it may be argued otherwise, the case comes down to this: were the bonds in effect realized on when the taxpayer received the assets and surrendered the stock? If they were, the tax court was right for the receipt on a debt of more than was paid on it is taxable gain. If they were not, it was wrong, for no recognizable gain arises from the mere liquidation, as such, of the subsidiaries. Here is the battleground. Here are the forces marshalled.

For the reasons that it gave, we think the Tax Court was right. If the bonds had been paid off before, and not as part of, the liquidation, no one would doubt that there would have been a gain in the amount of the discount at which they were purchased, indeed petitioner would not contend differently. We are in no more doubt that the fact that they were paid off in connection with the liquidation in no manner changes the picture. In each case, though the form of the transaction would be different, the fact of it would be that bonds bought for less than their face were paid off at face, the net assets remaining were exchanged in liquidation for the stock. The fact of the intervention of the Texas corporation, transferee, and petitioner here, and the de-

---

subsidiaries to Delaware, subject to a contract and vendor's lien in favor of the trust, the assumption by Delaware of the outstanding debts and liabilities of the subsidiaries and the delivery of the common and preferred stock to each subsidiary for cancellation, each subsidiary to be completely dissolved upon completion of this plan. The plan was carried out, Delaware assumed payment of the debts and the liabilities of each subsidiary, including its bonds delivered the stock to the subsidiaries where they were cancelled, and on Sept. 10, 1940, the subsidiaries were dissolved. Their bonds were not, however, cancelled until Dec. 11, 1940, when they were cancelled by petitioner with consent of the trustee.

As of July 31, 1940, as part of the plan, Delaware, upon full assumption by petitioner of all taxpayer's liabilities, sold and conveyed to petitioner all of its assets and properties, including those acquired from the subsidiaries, subject to the liens mentioned above.

Delaware exchanged petitioner's stock with its stockholders, share and share of its own stock, and was formally dissolved on Nov. 27, 1940.

By indenture of trust dated July 29, 1940, between petitioner and trustee, joined in by Delaware, petitioner recognized the obligation to pay the bonds of each subsidiary and, agreeing to perform all the covenants of the indenture of Dec. 1, 1928, recognized a lien in favor of the trustee on all the assets of the subsidiaries. The petitioner then conveyed all of its property and assets to the trustee in trust.

When the subsidiaries transferred their assets to Delaware as of July 31, 1940, the fair market value of the assets of each was then in excess of its outstanding indebtedness.

In determining Delaware's income tax for 1940, the commissioner added to its reported income a gain of $310,918.80, the amount of discount at which Delaware had acquired the bonds.

[3] United States v. Kirby Lbr. Co., 284 U.S. 1, 52 S.Ct. 476 L.Ed. 131; Helvering v. American Chicle Co., 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891; Com'r v. Jacobson, 69 S.Ct. 358.

ferment for awhile of the cancellation of the bonds is without significance in law. Under the undisputed facts, what occurred here was that when Delaware assumed the payment of the bonds of its wholly owned subsidiaries, the transaction as to the bonds had come full circle,[4] and Delaware then and there realized taxable gain in the amount of the difference between the amount it had paid for, and the face of, the bonds it assumed. Further, the transfer in liquidation by which the subsidiaries transferred their assets and received in return the cancellation and surrender of their stock, under Sec. 112(b) (6) was indeed tax free, but this transfer did not include transfer of the bonds. These were not assets, they were obligations of the subsidiaries owned and assumed by Delaware. The transfer in liquidation was not of them or of any other of their obligations.[5] It was if the net assets, subject to any of the obligations which were not then paid.

The judgment was right. It is Affirmed.

LEE, Circuit Judge (dissenting).

Delaware acquired most of the bonds from the subsidiaries upon original issue at a discount from par some time between 1928 and 1938, and by July 31, 1940, it owned all the bonds of the subsidiaries, upon which the aggregate discount amounted to $310,918.80. The profit, that is, the difference between the face value and the purchase price, or the discount would be taxable in the year in which the purchase of the specific bond took place, rather than, as decided by the majority, in the year when the final merger of the bonds and their security into one corporation took place.

At all times the subsidiaries were wholly owned by Delaware, and, except for the patently manufactured intricacies of the holding-company scheme, Delaware was, in fact, the hub of a single enterprise, composed of itself and its subsidiaries. The landmark case in this field is United States v. Kirby Lumber Company, 284 U. S. 1, 52 S.Ct. 4, 76 L.Ed. 131. There the Supreme Court held that purchase by a corporation, at discount, of its own bonds issued at par resulted in income taxable in the year the purchase was made.[1] The doctrine of the Kirby case was expanded in Helvering v. American Chicle Company, 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891, wherein a corporation which received the assets of another and assumed the obligation of the other's bonds was held taxable for income in the amount of the discount at which they later acquired some of the bonds.[2]

In the recent case Commissioner of Internal Revenue v. Jacobson, 69 S.Ct. 358, this same theory was approved and applied to an individual purchasing his bonds at a discount. This result is reached through application of § 22(a) of the Revenue Act of 1928:[3]

" 'Gross income' includes gains, profits, and income derived from * * * dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from * * securities * * *."

Upon the foregoing law, it seems to me the decision in this case should rest.

---

[4] Helvering v. American Chicle Co., 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891.

[5] W. D. Haden Co. v. Com'r, 5 Cir., 165 F.2d 588; Bynum v. Com'r, 5 Cir., 113 F.2d 1; Snead v. Elmore, 5 Cir., 59 F.2d 312.

[1] That the law of the Kirby case has been encroached upon by the Revenue Act of 1942 as it amended Internal Revenue Code § 22(b) (9), 26 U.S.C.A. § 22(b) (9), allowing a corporation to exclude from gross income the amount derived from purchase at a discount of its own securities, is not pertinent in the instant case, as the latest year with which we are dealing is 1940.

[2] For a more extensive discussion of the authorities applicable to this situation, see Mertens, Law of Federal Income Taxation, vol. 2, pp. 89 et seq., § 11.21.

[3] The same provision has been retained in subsequent revenue acts and now appears at 26 U.S.C.A. § 22(a).