SPAULDING BAKERIES INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55543. Filed January 18, 1957.

*Norris Darrell, Esq.*, and *Richard G. Powell, Esq.*, for the petitioner.
*James E. Markham, Jr., Esq.*, for the respondent.

#### OPINION.

MULRONEY, *Judge:* Respondent determined deficiencies in income tax of the petitioner for the calendar years 1949 and 1950 in the amounts of $59,920.06 and $65,888.33, respectively.

All of the facts were stipulated. The only question in the case is whether petitioner was entitled to a claimed worthless stock deduction for the year 1950 in the amount of $320,919.07 with respect to the common capital stock in Hazleton Bakeries, Inc., a wholly owned subsidiary. The year 1949 is involved insofar as petitioner claimed a net operating loss carryback of $152,582.80 resulted from the alleged loss of $320,919.07 in 1950.

Petitioner is a New York corporation with its principal office in Binghamton, New York. It filed its income tax returns for the years here involved with the then collector of internal revenue for the twenty-first district of New York at Syracuse, New York.

Hazleton Bakeries, Inc., was incorporated under the laws of the

State of Delaware in 1927. The certificate of incorporation provided, in part, as follows:

IV. The corporation is authorized to issue Ten Thousand (10,000) Shares of capital stock of the following classifications, to-wit:

(a) Three Thousand (3,000) Shares of common stock of no nominal or par value; and

(b) Seven Thousand (7,000) Shares of preferred stock of the par value of One Hundred Dollars ($100.00) each, amounting in the aggregate to Seven Hundred Thousand Dollars ($700,000.00).

The preferred stock may be issued as and when the Board of Directors shall determine and shall entitle the holder thereof to receive out of the net earnings, and the corporation shall be bound to pay, quarter-annual dividends, cumulative from May 1st, 1927, at the rate of 8% per annum, and payable before any dividend shall be set apart or declared on the common stock.

\* \* \* \* \* \* \*

Unless authorized by the votes given in person or by proxy, by the holders of at least a majority of the preferred capital stock of the company, issued and outstanding and represented and voted in person, or by proxy, at a meeting specially called for that purpose, the Board of Directors shall not mortgage or pledge any property of the Company or any shares of the capital stock of any corporation owned by it; but this prohibition shall not be construed to apply to the execution of any purchase-money mortgage, or any other purchase-money lien.

\* \* \* \* \* \* \*

On dissolution or liquidation of the corporation the holders of the preferred stock shall be entitled to receive the full par value of their said stock and all unpaid dividends accrued thereon before any payment whatever is made upon the common stock of the corporation.

The voting power of the corporation shall be vested in the common stock exclusively except only insofar as the vote of preferred stock may be herein specifically required in the event of mortgage or pledge of the assets, property and franchises of this corporation.

The 7,000 preferred shares were issued to G. Stewart Engle, Hazelton Cake Company, and Hazelton Bakery Company in exchange for securities of other companies acquired at the time of Hazelton Bakeries, Inc.'s incorporation and were stated on the books of Hazelton Bakeries, Inc., at their aggregate par value of $700,000. The 3,000 common shares were all originally issued for cash to C. J. Layfield and were carried on the books of Hazelton Bakeries, Inc., at a stated value of $100,000, being the amount received therefor.

On April 15, 1930, petitioner purchased 1,650 common shares of Hazelton Bakeries, Inc., and acquired the balance of the outstanding common shares of that company by subsequent purchases of 1,053 shares in January 1931 and of 297 shares in January 1933. The aggregate cost to petitioner of the 3,000 common shares was $335,592.69. The stipulation is that the cost basis to petitioner of these 3,000 common shares, adjusted for losses of Hazelton Bakeries, Inc., availed of in consolidated returns, was $320,919.07.

In transactions during the years 1933 through 1946 petitioner acquired 5,977 shares of the preferred stock of Hazelton Bakeries, Inc., constituting all the then outstanding shares of this class, at an aggregate cost of $293,651.82. The par value of such shares was $597,700. The stipulation is that the cost basis to petitioner of these 5,977 preferred shares, adjusted for losses of Hazelton Bakeries, Inc., availed of in consolidated returns, was $280,812.01.

On December 1, 1950, Hazelton Bakeries, Inc., was dissolved under the laws of the State of Delaware, under a plan of dissolution and liquidation adopted September 18, 1950.

On dissolution all the assets (taken at book value) of Hazelton Bakeries, Inc., were transferred to petitioner as follows:

| | |
|---|---|
| Current assets | $83,726.98 |
| Fixed assets (net) | 232,874.50 |
| Other assets | 11,865.36 |
| | $328,466.84 |
| Less liabilities | 60,789.53 |
| | $267,677.31 |

The fair market value of the assets so received was not greater than the said book value.

Thirteen of the 15 certificates representing the 5,977 shares of preferred stock of Hazelton Bakeries, Inc., bear the notation written across their face in ink "Cancelled—December 1, 1950—Corporation Dissolved—W. W. Schmitt." Two of the certificates place the date just before the name W. W. Schmitt and one of these two omits the word "Cancelled." These notations were made subsequent to December 1, 1950.

Each of the common stock certificates bears the notation written across its face in ink "Corporation Dissolved—December 1, 1950—W. W. Schmitt." These notations were made subsequent to December 1, 1950.

Petitioner took a deduction from gross income for the calendar year 1950 of $320,919.07 due to the worthlessness of its common stock in Hazelton Bakeries, Inc. Respondent disallowed the deduction on the ground that under the facts such loss is not to be recognized under the provisions of section 112 (b) (6). That statute provides, in part, that no gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation but only if—

(A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number

of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of the plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property; and

\* \* \* \* \* \* \*

(C) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock, shall be considered an adoption of a plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution; \* \* \*

Respondent argues the tests prescribed in the above statute for non-recognition of losses are here met. The argument is that petitioner owned all of the stock of Hazelton Bakeries, Inc., and, pursuant to a plan of complete liquidation all of the assets of Hazleton Bakeries, Inc., were transferred to it as sole stockholder in cancellation of petitioner's stock interest in Hazleton Bakeries, Inc.

Petitioner argues, since the assets on liquidation were insufficient to satisfy the prior claim of the preferred stock, nothing was distributed to it in respect to its common stock and, therefore, it was entitled to the loss deduction under section 23 (f) and (g) (4) of the 1939 Code due to the worthlessness of its common stock, and section 112 (b) (6) has no application. It seems to be admitted petitioner would be entitled to the deduction if section 112 (b) (6) would not prevent its recognition.

The issue here presented, apparently for the first time, is whether section 112 (b) (6), Internal Revenue Code of 1939, prevents a corporation which owns all the common and preferred stock of a second corporation from taking a loss deduction due to the worthlessness of its common stock, when the assets of the second corporation at dissolution are insufficient to satisfy the prior claim of the preferred stock, and nothing is or can be distributed in respect of the common stock.

"The liquidation of a corporation is the process of winding up its affairs, realizing its assets, paying its debts, and distributing to its stockholders, *as such*, the balance remaining." (Italics supplied.) *C. M. Menzies, Inc.*, 34 B. T. A. 163, 168.

While respondent admits the assets distributed to petitioner were insufficient to satisfy the claim of the preferred stock, he contends the distribution must be treated as a distribution by Hazleton Bakeries, Inc., on all its stock, both preferred and common. Respondent states in his brief, "Section 112 (b) (6) refers to stock and makes no distinction between preferred and common for purposes of its appli-

cation." Let us test this argument to see if, when so construed, the statutes would have general application within the obvious intent of Congress.

In this liquidation the parent would have received none of the assets of the subsidiary if the preferred stock claim in liquidation had been owned by outsiders. In that event its loss on its common stock would have been recognized for then it could not have been said there was any distribution to the parent. The statute is specific in that there must be a "distribution" in liquidation and the distribution must be "in complete cancellation or redemption of all its [parent's] stock." What does the phrase "all its stock" mean? Clearly it means at least 80 per cent of the common or voting stock. Does it also mean to include nonvoting stock which is limited and preferred as to dividends? We think not. The statute specifically excepts such preferred stock from the classes of stock which the parent should own—it could be owned by the parent or outsiders. This is a liquidation statute dealing with certain distributions in liquidation so the specific exception in effect states, whether the preferred stock claim in liquidation is owned by the parent or outsiders is immaterial. This means the payment in liquidation, in satisfaction of the preferred stock claim, whether to the parent or outsiders, will be immaterial. There must be some distribution to stockholders after the payment in satisfaction of the claim of the nonvoting preferred stock. To hold otherwise would make ownership of the nonvoting preferred stock a requisite to application of the law when Congress was careful to say it was not. Here there was no payment or distribution to the parent after the payment of the preferred stock claim in liquidation. The preferred stock claim captured all of the assets. There was nothing left to distribute to the parent as a common stockholder in the subsidiary. We hold the parent received no distribution in liquidation on its common stock within the intendment of the statute. Petitioner merely received in liquidation, payment of a part of its preferred stock claim—a fact which the statute, in effect, states will be immaterial.

The principle set forth in a number of our decisions where the sole stockholder parent is also the creditor of the subsidiary is applicable here. In those cases we held, in what would otherwise be a section 112 (b) (6) liquidation but for the fact that the distribution to the parent is insufficient to satisfy more than a part of the debt, the parent has both a deductible bad debt and a deductible stock loss. *Iron Fireman Manufacturing Co.*, 5 T. C. 452; *H. G. Hill Stores, Inc.*, 44 B. T. A. 1182; *Glenmore Distilleries Co.*, 47 B. T. A. 213; and *Northern Coal & Dock Co.*, 12 T. C. 42.

We need not go into the distinctions that exist in corporation law between corporate indebtedness and preferred stock. There certainly is no distinction in general law between the treatment of preferred stock claims and creditor claims as respects their priority over common stock on dissolution. In the cited cases we held nothing was or could be "distributed" on dissolution to the common stockholders until the full liquidation preference of the creditors was satisfied. The decisions are authority for the conclusion that nothing was or could be "distributed" on dissolution to the common stockholders until the full liquidation preference of the preferred stockholders was satisfied.

We hold section 112 (b) (6) does not govern the situation here presented. The statute does not permit respondent to treat the property received by the taxpayer in satisfaction of its preferred stock claim as though it were also received as a distribution to the taxpayer for its common stock. There was no distribution to the petitioner as such common stockholder. The common stock was worthless and petitioner was entitled to the claimed deduction.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

---

PIERCE, *J.*, dissenting: I am unable to agree with the holding of the majority, that section 112 (b) (6) of the 1939 Code "does not govern the situation here presented." To the contrary, I feel that the facts (all of which were stipulated) bring the case within both the letter and the intent of that statute.

Section 112 (b) (6) provides: "No gain or loss shall be recognized upon the receipt by a corporation of property distributed upon the complete liquidation of another corporation." Here, all the prerequisites to application of said statute, as specified therein, have been met, to wit:

(a) The parent corporation (petitioner herein) more than complied with the minimum requirements as to stock ownership. It owned 100 per cent of all shares of all classes of the subsidiary's stock; and there was no change in this stock ownership, at any time material.

(b) The subsidiary made no distribution under the liquidation prior to the calendar year 1950, which is here involved.

(c) All net assets of the subsidiary, of every kind and character, were conveyed and transferred to the parent, pursuant to resolutions adopted by the directors of both corporations on September 18, 1950, which provided that the subsidiary should be dissolved as of December 1, 1950, and that such conveyance and transfer to the parent should be made "in connection with the dissolution."

(d) Since there was no series of distributions, the provisions respecting distributions of such character are not applicable. No other prerequisite to application is specified. The statute pertains only to the *income tax consequences* of "the receipt * * * of property" incident to the "complete liquidation of another corporation"; and it contains no provision which makes its application dependent upon principles of local corporate law—such as how the property received should be marshaled or allocated, on the parent's books, between the preferred and common shares; or respecting what effect should be given to par values. To the contrary, the last sentence of section 112 (b) (6) provides:

A distribution otherwise constituting a distribution in complete liquidation within the meaning of this paragraph shall not be considered as not constituting such a distribution merely because it does not constitute a distribution or liquidation within the meaning of the corporate law under which the distribution is made; * * *

Section 112 (b) (6) provides an exception to the general rule, whereby liquidation of a corporation usually results in capital gain or loss to the stockholders. (See sec. 115 (c).) In providing for the nonrecognition of gains or losses in specified situations, it operates in a manner similar to various other paragraphs of section 112, relating to corporate reorganization; and, under related provisions of section 113 (a) (15), the basis of the assets received by the parent remains the same as the basis thereof in the hands of the subsidiary. All of this is predicated on the so-called "unitary theory"—that the parent corporation and its subsidiary together, constitute a single enterprise; and that persons interested in such enterprises should not be confronted with tax consequences, as a result of intracompany transactions which may make the corporate structure more complex or more simple, but which leave the parent corporation and its shareholders no wealthier or poorer than they were before. See *Cortland Specialty Co.* v. *Commissioner*, 60 F. 2d 937, 939–940, (C. A. 2), certiorari denied 288 U. S. 599; *Helvering* v. *Credit Alliance Corporation*, 316 U. S. 107, 112. See also, Hearings Before Senate Finance Committee on H. R. 8974, 74th Cong., 1st Sess., pp. 170–171, 301–303 (1935).

The nonrecognition of gain or loss for income tax purposes, in connection with certain transactions, is a matter of policy on which Congress has the final say. And a statute embodying such policy should be so construed as to give effect to its intent.

I would have held that no gain or loss to the petitioner should be recognized in connection with the dissolution of its wholly owned subsidiary.

HARRON and TIETJENS, *J. J.*, agree with this dissent.