**CUMMINS DIESEL SALES CORP.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**No. IP 68–C–181.**

United States District Court,
S. D. Indiana,
Indianapolis Division.

March 15, 1971.

McHale, Cook & Welch, Indianapolis, Ind., Walter W. Brudno, Dallas, Tex., for plaintiff.

Stanley B. Miller, U. S. Atty., Indianapolis, Ind., Johnnie M. Walters, Asst. Atty. Gen., Donald R. Anderson and Herbert Grossman, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF DECISION

DILLIN, District Judge.

This cause having been submitted to this Court for its decision upon the stipulation of the parties and upon the plaintiff's Statement of Additional Facts, consented to by the defendant, the Court now states its findings of fact and conclusions of law in the form of this memorandum of decision. At the outset, the Court finds it has jurisdiction of this matter, a suit for the refund of corporate income taxes, pursuant to 28 U.S.C. § 1346(a) (1).

## FACTS

Plaintiff is a wholly owned subsidiary of the Cummins Engine Company, a producer in the main of large diesel truck engines. Plaintiff ("Cummins") serves as the sales outlet for its parent, operating through branches scattered across the country. During the middle and late nineteen fifties, plaintiff, for good business reasons, sold several of these local branches to independent parties. To accomplish this, the assets of the former branches were conveyed to new corporations formed by such parties.

The local financing being inadequate, Cummins took a preferred stock position in these independent corporations and in some cases also made term loans to them. It also supplied some working capital to the new dealerships in return for additional preferred stock. Plaintiff owned no common stock; it was held solely by local management in every case. The preferred, which is the matter at issue is this case, carried a dividend of ten per cent and was cumulative. The stock was preferred in liquidation and no dividends could be paid common shareholders until the preferred was retired. The high dividend was to serve as an incentive to the local owners to refinance from cheaper commercial sources as soon as practicable.

For the ten corporations with which we are concerned in this matter, refinancing occurred between 1961 and 1964, the taxable years at issue. Within that period, nine of the local companies procured bank or insurance company loans and redeemed the preferred stock owned by plaintiff. Most of the nine accomplished the redemption by a lump sum payment. A few spread the redemption in series over two or three years; however, both parties are agreed and this Court finds that the tax effect is identical regardless of whether lump or serial. One of the independent corporations, Cummins Piedmont Diesel, Inc., apparently did not operate satisfactorily and was reacquired by Cummins in return for the cancellation of the preferred and the payment of cash. Here again, both parties take the position that taxwise the matter is identical to the other nine and, because of this Court's disposition of the case, it will be so treated. Prior to the redemption, only one of the distributor corporations had paid any dividends on the preferred stock. Cummins Diesel of Northern Ohio, Inc., in 1961 paid accrued dividends to that date of $57,000.00 by a note and a small cash payment. The

note payments in 1962, 1963 and 1964 were reported by plaintiff as dividends and the defendant did not dispute those items, which are not at issue here.

In return for the surrender of its preferred stock, plaintiff received from the independent corporations the par value of the preferred (its cost basis) and a sum equal to the accrued and unpaid dividends on each share of stock. In its tax returns for these four years, Cummins reported each transaction as a tax free return of capital up to the par value and the excess as a dividend, taking the intercorporate dividend credit of 85 per cent against the latter sum. 26 U.S.C. § 243. The government in its deficiency notice recomputed the return, treating the entire payment as consideration received in the redemption and taxed the excess over basis as a long term capital gain. 26 U.S.C. § 302. Plaintiff paid the additional tax under protest and filed for a refund, which was denied. Plaintiff now sues for a refund.

The sole issue is whether accumulated dividends paid to a holder of preferred stock at the time it is called for redemption must be considered as an indivisible part of the total sum paid on redemption within the meaning of 26 U.S.C. § 302,[1] if such dividends were not declared prior to the corporate resolution electing to call the stock, assuming that the statute is otherwise applicable to the transaction. The Court holds in the affirmative.

It is indeed strange, considering the numerous times that transactions similar to the one at bar occur in the corporate world, that the precise question appears to be one of first impression. It is for such reason, no doubt, that the many authorities cited by the parties are, in the main, inapposite. However, there are guideposts along the way which point to the solution.

In the first place, it should be noted that the administrative position of the Commissioner of Internal Revenue since 1925 has been that, in the absence of a prior and independent dividend declaration, the total consideration paid in the redemption of preferred stock with arrearages is to be treated as a capital gain. Rev.Rul. 69–131, C.B. 1969–1, 94, superseding S.M. 4181, C.B. IV–2, 12 (1925) Rev.Rul. 69–130, C.B. 1969–1, 93, superseding G.C.M. 5180, C.B. VII–2, 110 (1928). See also Rev.Rul. 56–485, C.B. 1956–2, 176.

Although not binding on this Court, such a longstanding administrative position held without variation for 46 years through several re-enactments and codifications is entitled to great weight in this Court's determination. Fribourg Navigation Co. v. Commissioner of Internal Revenue, 1966, 383 U.S. 272, 86 S.Ct. 862, 15 L.Ed.2d 751; Helvering v. Winmill, 1938, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52. Plaintiff can hardly claim that defendant's construction of § 302 was novel, capricious or unpredictable.

---

1. The pertinent parts of the statute are as follows:
 "§ 302. *Distributions in redemption of stock*
 *(a) General rule.*—If a corporation redeems its stock * * * and if paragraph (1), (2), (3), or (4) or subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.
 *(b) Redemptions treated as exchanges.—*
 *(1) Redemptions not equivalent to dividends.*—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.

 \* \* \* \* \*
 *(3) Termination of shareholder's interest.*—Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder.
 \* \* \* \*
 *(5) Application of paragraphs.*—In determining whether a redemption meets the requirements of paragraph (1), the fact that such redemption fails to meet the requirements of paragraph (2), (3), or (4) shall not be taken into account.
 \* \* \* "

■ The great majority of § 302 cases find the positions of the adversaries reversed, with the taxpayer claiming the benefits of the statute, and the Government in opposition. This for the reason that, generally speaking, application of the section works to the advantage of the taxpayer. As has been said, the requirements of § 302, if carefully observed, provide "safe harbors" for taxpayers seeking capital gain treatment, and permit more accurate and long range tax planning. Levin v. Commissioner of Internal Revenue, 2 Cir., 1967, 385 F.2d 521, 525. However, it is fundamental that the statute must be construed uniformly, whether it helps or hurts a taxpayer in a given case.

The one cited case which is somewhat analogous to the one before the Court is that of Estate of Mathis v. Commissioner of Internal Revenue, 1966, 47 T.C. 248. In that case decedent's administratrix entered into a contract with a corporation, whereby the corporation agreed to redeem all of its preferred stock held by the estate. The redemption was to take place over a fixed period of time, with a large final payment equivalent to the par value of the stock and smaller payments equivalent to the dividends which would have been accrued during the period of the contract. The Commissioner characterized the interim payments as dividends, and assessed deficiencies accordingly, over the estate's protest that such payments were installment payments under the purchase contract.

The Tax Court held the fact of dividend equivalency to be immaterial, under the circumstances, saying: "The evidence of record has convinced us that $36,130 of the $136,130 received under the preferred stock redemption agreement actually was measured by an allowance for accrued and unpaid dividends, although no formal declaration of dividends had ever occurred. However, this does not mean that the $36,130 should be treated as ordinary dividend income. On the contrary, accrued dividends on preferred stock paid in connection with a stock redemption are properly treated as part of the payment in exchange for the stock. See G.C.M. 5180, VII-2 C.B. 110. The decisive question, therefore, is whether the $36,130 here involved should be considered to have been paid in part payment for the preferred stock in connection with a stock redemption.

"While conceding that the sale of the preferred shares was in complete redemption, respondent contends that the initial and installment payments were dividends and the final payment was the true redemption price. The problem with his argument is that it fails to distinguish an obligation arising under a purchase contract from an intangible right to dividends which have never been declared. At the time the redemption contract was executed, Krispy Kreme had no obligation to pay dividends which had theoretically accrued on the preferred stock. While it is true that owners of the preferred stock would be entitled to accrued dividends before dividends could be paid on the common stock or before distributions could be made to common shareholders upon dissolution of the corporation, this does not support the existence of a presently enforceable right to receive accrued dividends in a certain dollar amount on the date the purchase contract was executed. Therefore, we see no reason to segregate the receipt of $36,130 from the redemption of the preferred shares based upon the foregoing reasoning of respondent."

■ Applying *Mathis* to the case at bar, it will be noted at the outset that the Tax Court follows G.C.M. 5180, which held, *inter alia*, that only dividends declared prior to action being taken toward complete or partial dissolution would be taxed as ordinary income. As noted above, G.C.M. 5180 and other early rulings have now been superseded by Rev.Rul. 69–130 and 69–131. In the case at bar, it is undisputed that accrued dividends were separately identified and paid as such, but as in *Mathis* there was

**1118**

no presently enforceable right in Cummins to receive accrued dividends in a certain dollar amount independent of the instrument providing for redemption. I. e., the minutes of the various redeeming corporations typically and simply provide in substance: "Resolved, that the corporation redeem all outstanding cumulative preferred stock, paying therefor the par value thereof plus all cumulative dividends accrued to the date of redemption." On these facts, this Court holds that payment of the dividends was but an incident and an integral part of a § 302 redemption, to be taxed according to that section. See Auto Finance Co. v. Commissioner of Internal Revenue, 1955, 24 T.C. 416, aff'd 4 Cir., 229 F.2d 318.

Plaintiff's main argument is to the effect that if the payments made in excess of the par value of the stock were dividends, then it is mandatory that they be taxed as ordinary income, pursuant to 26 U.S.C. § 301(c) (1).[2] This Court has no difficulty in agreeing that the payments were dividends both in fact and in law, as the somewhat informal corporate resolutions were, in the Court's opinion, sufficient to constitute a declaration of dividends (although this may be debatable in those instances in which the resolutions failed to fix a date certain for payment).

 However, it is not believed that the issue regarding the nature of the payments controls the case. There is no divine law which requires dividends to be taxed as ordinary income in all circumstances. To the contrary, the Congress, in the exercise of its discretion, may cause them to be taxed either as ordinary income, or as income subject to capital gains treatment, or, as it has done in fact, provide for differing treatments according to the circumstances of the situation. Thus understood, it is apparent that § 301(c) (1) and § 302, read *in pari materia,* clearly reflect the Congressional mandate that dividends must be taxed as provided in § 302 when the provisions of that section are met, and to such extent the tax treatment afforded is an exception to the general rule set out in § 301(c) (1).

There is otherwise no question as to the applicability of § 302, inasmuch as it is conceded that as to nine of the dealer corporations the redemption was complete, hence within subsection (b) (3). As to the remaining dealer corporation, the redemption was concededly not equivalent to a dividend, hence within subsection (b) (1). See 1 Fed.Tax Reg., 1969, § 1.302–2(a).

Plaintiff here was the dominant party in the creation of the preferred stock in question, and was no doubt consulted at the time of its redemption. It could easily have caused its dividend to have been declared and paid other than as an incident of the redemption of the stock. It cannot now expect this Court to accomplish for it what it failed to accomplish for itself.

Judgment will accordingly be entered for the defendant.

---

2. "§ 301. *Distributions of property*
(a) *In general.*—Except as otherwise provided in this chapter, a distribution of property * * * made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).
 * * * * *

(c) *Amount taxable.*—In the case of a distribution to which subsection (a) applies—
 (1) *Amount constituting dividend.*—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income."