ARIE S. CROWN, ET AL.,[1] PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3359-70—3366-70.    Filed August 14, 1972.

■■■■■■■■■■■■■

---

[1] Cases of the following petitioners are consolidated herewith: James S. Crown, docket No. 3360-70; Patricia A. Crown, docket No. 3361-70; Daniel M. Crown, docket No. 3362-70; Debra L. Crown, docket No. 3363-70; Nancy J. Crown, docket No. 3364-70; Richard C. Goodman, docket No. 3365-70; and Laurie J. Crown, docket No. 3366-70.

*Byron S. Miller, Alan L. Reinstein,* and *Merrill A. Freed,* for the petitioners.

*Seymour I. Sherman,* for the respondent.

SIMPSON, *Judge:* The respondent determined deficiencies in the petitioners' income taxes for the year 1966 as follows:

| Petitioner | Deficiency | Petitioner | Deficiency |
|---|---|---|---|
| Arie S. Crown | $55, 669. 64 | Debra L. Crown | $26, 098. 36 |
| James S. Crown | 33, 141. 57 | Nancy J. Crown | 175. 42 |
| Patricia A. Crown | 28, 749. 60 | Richard C. Goodman | 3, 429. 35 |
| Daniel M. Crown | 22, 457. 34 | Laurie J. Crown | 2, 308. 99 |

Most of the issues in this case have been settled; the one issue remaining for decision is whether all the proceeds received by a petitioner when his stock was redeemed are taxable as a capital gain under section 302(a) of the Internal Revenue Code of 1954 [2] or whether a portion of the proceeds is taxable as a dividend under section 301.

FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

Each of the petitioners resided in the State of Illinois at the time his petition was filed in this case. Each is unmarried and filed his individual Federal income tax return for 1966 with the district director of internal revenue, Chicago, Ill.

Effective December 31, 1959, an Illinois corporation known as the Material Service Corp. (MSC) was merged into the General Dynamics Corp. (GD), a Delaware corporation. As a result of the merger, the common shareholders of MSC received convertible preference stock of GD. The convertible preference stock issued to the common shareholders of MSC was the only GD preference stock outstanding from 1959 until its redemption in 1966. During this time, trusts for the

---

[2] All statutory references are to the Internal Revenue Code of 1954.

benefit of the petitioners held shares of the convertible preference stock as follows:

| Trust for | Number of shares | Trust for | Number of shares |
|---|---|---|---|
| Arie S. Crown | 2,400 | Debra L. Crown | 1,275 |
| James S. Crown | 1,528 | Nancy J. Crown | 21 |
| Patricia A. Crown | 1,254 | Richard C. Goodman | 269 |
| Daniel M. Crown | 1,124 | Laurie J. Crown | 188 |

Each trust was required to distribute all of its net income, including capital gains, to its beneficiary. Although the trusts were the record shareholders of the stock, the petitioners shall be treated as the owners of the stock for the purpose of this opinion.

The agreement and plan of merger, which under Delaware law became part of the certificate of incorporation of GD, set forth the dividend rights of the preference shareholders as follows:

The holders of the Preference Stock shall be entitled to receive dividends, commencing April 1, 1964, but not before, when and as declared by the Board of Directors from the surplus or net profits of the Surviving Corporation [GD] available for the payment thereof, at the rate of $2.90625 per share per annum, and no more.

Dividends on the Preference Stock shall be payable quarterly, commencing on April 1, 1964, on the first days of January, April, July and October in each year * * * . The dividends on the Preference Stock shall be cumulative from and after January 1, 1964 and shall be deemed to accumulate from day to day thereafter, and shall be paid or set apart for payment before any dividend on the Common Stock shall be paid or set apart; so that, if in any dividend period, dividends at the above rate shall not have been paid thereon, the deficiency shall be paid or set apart for payment before any dividends shall be paid upon or set apart for the Common Stock.

After full cumulative dividends on all shares of Preference Stock outstanding shall have been declared and paid, or set apart for payment, for all previous dividend periods and for the current dividend period, * * * then and not otherwise, * * * subject to the provisions of the next paragraph hereof, dividends may be declared and paid, or set apart for payment, on the Common Stock, payable then or thereafter, out of any remaining surplus or net profits available for the payment of dividends.

So long as any of the Preference Stock shall be outstanding, the Surviving Corporation shall not (i) declare or pay any dividend (whether in cash, stock of any other corporation or otherwise) or make any distribution on the Common Stock * * *, or (ii) directly or indirectly, either in its own capacity or through any subsidiary or otherwise, purchase, redeem or otherwise acquire for value * * * any shares of Common Stock * * *, if:

(1) the Surviving Corporation shall not have declared and paid, or set apart for payment, full cumulative dividends on all outstanding shares of Preference Stock for all previous dividend periods and for the current dividend period; * * *

If any of the preference stock dividends were not claimed within 6 years of their payment date, they were to become corporate property.

The agreement also provided a procedure by which the holders of the preference stock, subject to certain variations not relevant here,

could convert their stock into common stock at the ratio of 1 share of preference stock for 1.056818 shares of common stock. No adjustments were to be made in the ratio on account of dividends, and in the event the preference stock was called for redemption, all such stock was immediately convertible into common stock until the close of business on the 15th day prior to the date fixed for such redemption. The preference stock was redeemable at the option of the GD board of directors at any time on or after January 2, 1964, in whole or in part, at a price equal to the sum of an amount designated as the current optional redemption price plus an amount equal to unpaid dividends accrued to the date fixed for the redemption.

The corporation could not adopt a resolution adversely affecting the preferences, rights, or powers of the preference stock without the affirmative vote of two-thirds of the then outstanding preference stock.

The entire agreement was conditioned on MSC's obtaining a favorable tax ruling from the Internal Revenue Service. In applying for this ruling, the attorney for MSC described the dividend rights of the preference stock as follows:

Beginning in 1964, the Preference Stock will be entitled to dividends at the rate of 5% per annum on the liquidating preference, which dividends will be cumulative and payable quarterly; no dividends will be declared or paid on the Common Stock of Dynamics unless all current and accumulated dividends on the Preference Stock have been paid * * *.

A substantially favorable ruling was issued on December 4, 1959.

After the merger of MSC into GD, the first action taken by the GD board of directors with respect to dividends on the preference stock occurred at a meeting held January 29, 1965, when the following resolution was adopted:

RESOLVED, that the cumulative dividends for the four quarterly dividend periods in 1964 aggregating $2,90625 a share be, and hereby are, declared on the Convertible Preference Stock of the Corporation payable March 1, 1965 to stockholders of record at the close of business on February 10, 1965; and further

RESOLVED, that a quarterly dividend of $0.7265625 a share be, and hereby is, declared on the Convertible Preference Stock of the Corporation payable April 1, 1965 to stockholders of record at the close of business on March 15, 1965; and that the amount of such dividends be, and hereby is, set apart for payment; and further

RESOLVED, that a quarterly dividend of $0.25 per share be, and hereby is, declared on the Common Stock of the Corporation, payable on March 10, 1965 to stockholders of record at the close of business on February 10, 1965.

At subsequent meetings in April, August, and October of 1965, the board, in language paralleling that of the last two paragraphs of the January 29 resolution, declared quarterly dividends on both the preference and common stock.

Early in 1966, the GD board of directors was desirous of declaring a dividend on the common stock of GD. However, because it was also contemplating both the possible sale of the material services division of GD for a consideration which would in part consist of the outstanding preference stock and the possible redemption and conversion of the preference stock, it did not want to incur a legal obligation to pay the quarterly dividends on the preference stock. In an attempt to declare and pay a dividend on the common stock without incurring a legal obligation to pay a dividend on the preference stock, the directors, on the advice of counsel, adopted the following resolution on January 28, 1966:

RESOLVED, that funds to pay on April 1, 1966 a quarterly dividend of $0.7265625 a share on the Convertible Preference Stock of the Corporation be, and hereby are, authorized and directed to be set apart on the books of the Corporation; and further

RESOLVED, that a quarterly dividend of $0.25 per share be, and hereby is, declared on the Common Stock of the Corporation, payable on March 10, 1966 to stockholders of record at the close of business on February 10, 1966.

The minutes of the January 28 meeting in respect to these resolutions state:

The Chairman stated that it was proposed (1) that funds adequate to pay a quarterly dividend of $0.7265625 per share on the Convertible Preference Stock of the Corporation be set aside on the books of the Corporation pending action on such dividend and (2) that a quarterly dividend of $0.25 per share be declared on the Common Stock of the Corporation. * * * He noted that the Preference Stock dividend would be declared only if it appears that the Preference Stock will be outstanding on March 31.

The actions of the board were pursuant to the opinion of counsel for GD that the resolutions were consistent with the merger agreement and did not constitute the declaration of a dividend on the preference stock.

Immediately after the January 28, 1966, board meeting, GD advised its stock transfer and dividend-disbursing agent of the action taken with respect to the declaration of a common stock dividend. It also advised the agent that a dividend had not been declared on the preference stock. No actual segregation of funds for a first quarter 1966 preference stock dividend was made by GD, and GD made no special entries on its books with respect thereto, apart from the normal monthly entries of reserves for dividend accruals.

On March 14, 1966, the GD board of directors met and adopted the following resolution:

The Corporation does hereby call for redemption on April 15, 1966, all shares * * * of the Convertible Preference Stock of the Corporation * * * at $62.7491 per share, representing the current optional redemption price of $61.9031 per

share \* \* \* plus an amount equal to full cumulative dividends from January 1, 1966 to and including April 15, 1966; \* \* \*

The preference stock was redeemed, and the $62.7491 per share was computed as follows:

| | |
|---|---|
| Optional redemption price_____ | $61.9031000 |
| Dividend accrued for period 1/1/66 through 3/31/66_ | 0.7265625 |
| Dividend accrued for period 4/1/66 through 4/15/66___ | 0.1194375 |
| | 62.7491000 |

Each of the petitioners reported the entire amount of $62.7491 per share as having been received in exchange for stock, and reported the resulting gain as a long-term capital gain. The respondent determined that $0.7265625 of the stated redemption price of each share should be taxed as a dividend.

### OPINION

The issue for decision is whether all the proceeds received by a petitioner when his stock was redeemed are taxable as a capital gain under section 302(a) or whether a portion of the proceeds represented a dividend taxable under section 301. The resolution of this issue necessitates the consideration of two basic questions: (1) Did a legal obligation exist prior to the redemption to pay the first quarterly dividend; and (2) if such an obligation existed, was the portion of the proceeds representing the payment of such obligation taxable under section 301? Except as to the portion of the proceeds which it contends represented the payment of a prior legal obligation, the respondent does not argue that taxation under section 302(a) is improper.

The right of a preference shareholder to receive dividends is contractual (12 Fletcher, Cyclopedia Corporations, secs. 5443 and 5451 (perm. ed.)), and therefore, whether GD had a legal obligation to pay a dividend on the preference stock depends upon the provisions of the agreement and plan for merger. The agreement provided in part that dividends on common stock shall not be declared or paid if the corporation "shall not have declared and paid, *or set apart for payment*, full cumulative dividends on all outstanding shares of Preference Stock for all previous dividend periods and for the current dividend period." (Emphasis added.) The petitioners contend that the "or set apart for payment" language means that nothing more than the monthly accrual of preference dividends on the corporate books is required before dividends can be paid on the common stock. The respondent argues that the "or set apart for payment" language is an alternative to payment and that before a dividend can be paid on

common stock a dividend must be declared and paid or declared and set aside for payment on the preference stock.[3]

In support of their contention, the petitioners rely on the fact that counsel for GD, at the January 28, 1966, meeting of the GD board of directors, expressed the opinion that a dividend could be declared on the common stock without declaring a dividend for the current quarter on the preference stock. In presenting its argument, the respondent contends that the petitioners' interpretation of the agreement would in effect mean that the preference shareholders had no preference with regard to dividends and suggests that the "or set apart for payment" language was included either to allow the setting aside of a dividend if the identity of any preference shareholder was unknown or to permit GD to pay common stock dividends at a date after the declaration but before the payment of preference stock dividends.

Preference as to dividends is usually at the heart of the preference stock contract and nothing in the merger agreement indicates that it should not be so here. 1 Dewing, Financial Policy of Corporations 128 (5th ed. 1953) ; Kehl, Corporate Dividends 187 (1941) ; 11 Fletcher, *supra*, sec. 5283. The agreement calls the stock "preference stock," includes a comprehensive section dealing with dividend preference, and provides that the preferences accorded to the preference stock are not to be adversely affected unless two-thirds of the preference shareholders approve of the actions so affecting their stock. For example, the portion of the section dealing with dividend preference provides : "The dividends on the Preference Stock * * * shall be paid or set apart for payment before any dividend on the Common Stock shall be paid or set apart." Clearly, such language requires more than the mere accrual of preference dividends before the payment of common stock dividends. Indeed, when the lawyer for the Crown interests acted pursuant to the agreement and requested a tax ruling, he wrote to the Internal Revenue Service that "no dividends will be declared or paid on the Common Stock of Dynamics unless all current and accumulated dividends on the Preference Stock have been paid."

We agree with the respondent that the petitioners' interpretation of the agreement would render any dividend preference illusory. The setting aside of funds for the payment of preferred dividends confers upon the preferred shareholders a right to such dividends. 11 Fletcher,

---

[3] A possible interpretation of the language, not argued by the parties, is that, if the funds are segregated for the payment of a preference dividend even though such dividend has not been declared, a dividend on the common stock may then be declared or paid. Apparently, the legal effect of so segregating the funds would be the same as a formal declaration of a preference dividend ; the shareholders would become creditors of the corporation. 11 Fletcher, Cyclopedia Corporations, secs. 5322, 5350 (perm. ed.).

*supra*, secs. 5332 and 5350. However, the mere accrual of dividends on the preferred stock gives the preferred shareholders no immediate right to such dividends. If the interpretation urged by the petitioners were adopted, dividends could be declared and paid on the common stock indefinitely merely by the accrual of dividends on the preferred stock without actually paying the preferred dividends or bestowing upon the preferred shareholders a right to such dividends. Only if the stock was redeemed or possibly if the corporation was liquidated would the preference shareholders have a right to receive their accrued dividends. We also believe that the purposes suggested by the respondent for the "set apart for payment" language are reasonable. The corporation recognized the problem of unidentified shareholders by providing in the agreement that dividends not claimed within 6 years of the payment date become corporate property. Similarly, the corporation at four different times apparently paid a common stock dividend after it had declared, but before it had paid, a preference stock dividend. Faced with the choice between an interpretation of the agreement which would provide only an illusory dividend preference and one which would provide a real dividend preference and still give effect to all parts of the agreement, we choose the latter and hold that the merger agreement required that preference stock dividends be either declared and paid, or declared and set aside for payment, before common stock dividends could be declared or paid.

Next, we turn to the question of whether, prior to the time that the plan of redemption was adopted, GD had a legal obligation to pay the first quarterly dividend on the preference stock. On January 28, 1966, the GD board of directors passed a resolution declaring a common stock dividend payable on March 10, 1966, and informed its dividend-paying agent that such dividend had been declared. The parties assume, and so do we, that such dividend was paid on March 10, 1966, as directed. Thus, GD had by March 10, 1966, declared and paid a common stock dividend without formally declaring and paying or formally declaring and setting apart for payment a preference stock dividend. The respondent contends that under such circumstances, GD had a legal obligation to pay a preference stock dividend and cites two cases which indicate that such an obligation existed.

In the first of these cases, *West Chester and Philadelphia R.R. Co. v. Jackson*, 77 Pa. 321 (1875), a railroad had issued stock which was to be paid 8-percent dividends before any other dividends were paid, but in 1873, the company declared and paid a 4-percent dividend on both its preferred and "consolidated" stock. The preferred stockholders sued at law for the payment of dividends and the court granted relief. The court stated at page 328 :

The dividend the defendants declared in July 1873, proved them to be in possession of ample funds. Unquestionably, the time had arrived when it was legitimate for the plaintiff to call on them to perform their contract. And her claim was properly presented in this action. This is not, in any aspect, an effort to coerce the policy or control the discretion of the directors. It is not an attempt to enforce the declaration of a dividend. That has been declared, but the defendants have made a mistaken distribution of money they admitted to be in their hands, and which legally belonged to the plaintiff. * * *

See 12 Fletcher, *supra*, sec. 5451.

Similarly, in *Schaffner* v. *Standard Boiler & Plate Iron Co.*, 150 Ohio St. 454, 83 N.E. 2d 192 (1948), the preferred shareholders, under applicable Ohio law, were entitled to dividends before dividends could be paid to common shareholders. Dividends were paid on the common stock and not on the preferred, and the court found, 83 N.E. 2d at 197, that:

Since the record discloses that dividends have been paid to the holders of common shares, there can no longer be any question that the owners of the preferred shares are entitled to the dividends then due them. The action of the corporation, wherein it appropriated from its surplus funds for the payment of dividends, in and of itself entitles the preferred shareholders to their dividends to the extent that such distribution from surplus was made to holders of the common shares.

Neither the respondent nor the petitioners have cited any cases dealing with this question from Delaware, the State of GD's incorporation, and we have found none in the course of our research. The petitioners have cited cases which held that a dividend was not fully declared when the fiscal officer of the corporation held the power to modify or revoke the dividend resolution. See, e.g., *United States* v. *Southwestern Portland Cement Co.*, 97 F. 2d 413 (C.A. 9, 1938); *United States* v. *Murine Co.*, 90 F. 2d 549 (C.A. 7, 1937), certiorari denied 302 U.S. 734 (1937). From such cases, they conclude that the January 28, 1966, resolution concerning the preference stock was not a declaration of a dividend. Yet, it is not contended by the respondent that such resolution gave rise to the legal obligation to pay a preference dividend; rather, it is contended that the payment of common dividends on March 10, 1966, gave rise to the obligation. On this question, we find that the cases cited by the respondent are applicable, and as we have not been presented with any reason for believing that the Delaware court would not come to the same conclusion, we conclude that as of March 10, 1966, GD had a legal obligation to pay the first quarterly dividend for 1966, and that the holders of the preference stock had a right to enforce such obligation.

The next question to be considered is whether the existence of such a legal right requires that $0.7265625 per share of the redemption price be treated as a section 301 distribution. The petitioners contend that

this case involves a section 302 redemption and that, therefore, all the proceeds which they received when their stock was redeemed must be taxed under section 302. The respondent contends that a portion of the proceeds is taxable under section 301 because it was not paid for the redemption of the stock but was paid in satisfaction of a legal obligation to pay a dividend. In presenting their contentions on this question, the petitioners cited two cases decided under section 302. *Estate of Oscar L. Mathis*, 47 T.C. 248 (1966) ; *Cummins Diesel Sales Corp.* v. *United States*, 323 F. Supp. 1114 (S.D. Ind. 1971), affirmed per curiam 459 F. 2d 668 (C.A. 7, 1972). Neither of these cases involved the situation where a legal obligation to pay the dividend existed prior to the redemption, and both courts emphasized that such a situation was not before them. *Estate of Oscar L. Mathis, supra* at 255; *Cummins Diesel Sales Corp.* v. *United States, supra* at 1117–1118. In both, it was simply held that, where there is no prior legal obligation to pay a dividend, the entire redemption price, even though it includes amounts representing accrued but undeclared dividends, is taxable as a capital gain.

Although our question apparently has not arisen in cases involving redemptions under section 302, an analogous question has arisen in cases where a corporation liquidates and makes a distribution to a person who is both a creditor and a shareholder of the corporation. In such a case, the question arises as to whether the whole distribution is a liquidating one so that any gain realized is a capital gain or whether the distribution is, at least in part, in payment of a debt, so that any repayment, in excess of the basis of the debt, is taxable as ordinary income. Under these circumstances, the courts have held that, to the extent of the outstanding debt obligation, the distribution is not a liquidating one within the contemplation of the Federal tax laws but the repayment of a debt. *D. J. Jorden*, 11 T.C. 914 (1948) ; *Harriet Aldrich*, 1 T.C. 602 (1943) ; see *Houston Natural Gas Corporation*, 9 T.C. 570 (1947), affd. 173 F. 2d 461 (C.A. 5, 1949). Similarly, if a corporation is indebted to a shareholder-employee for services rendered, the amounts distributed by the corporation when it liquidates are taxable at ordinary-income rates to the extent of the amount of the debt and at capital gains rates to the extent of the excess thereof. *O. D. Bratton*, 31 T.C. 891 (1959), affirmed per curiam 283 F. 2d 257 (C.A. 6, 1960), certiorari denied 366 U.S. 911 (1961) ; cf. *C. M. Gooch Lumber Sales Co.*, 49 T.C. 649 (1968) ; *Spaulding Bakeries Inc.*, 27 T.C. 684 (1957), affd. 252 F. 2d 693 (C.A. 2, 1958) ; *Houston Natural Gas Corporation, supra; Waterman Steamship Corporation* v. *United States*, 203 F. Supp. 915 (S.D. Ala. 1962), reversed on other issues 330 F. 2d 128 (C.A. 5, 1964), affd. 381 U.S. 252 (1965). If the amounts distributed are not in excess of the debt obligations, the courts have

found that *no* liquidating distribution has occurred even though the distribution was made as the corporation was liquidating. *D. J. Jorden, supra; Harriet Aldrich, supra.* Likewise, if the amount distributed by a subsidiary does not even allow the parent corporation to recover its basis in a debt owed it by the subsidiary, no section 332 liquidating distribution has occurred, and loss is recognized. *C. M. Gooch Lumber Sales Co., supra; Waterman Steamship Corporation* v. *United States, supra.* This general principle has been applied where a parent owned both common and preferred stock in its subsidiary, and the amount distributed was consumed by the liquidating preference of the preferred stock. Under these facts, this Court held that there was no liquidating distribution with respect to the common stock, and that loss could be recognized on the worthlessness of the common stock. *Spaulding Bakeries Inc., supra.* As stated in *Houston Natural Gas Corporation, supra* at 575:

Section 112(b)(6) [the predecessor of sec. 332] applies only to distributions in liquidation, and such distributions can not comprise assets required for the discharge of obligations. * * *

In the present case, there was a legal obligation to pay a dividend owed to the preference shareholders, and they had a legally enforceable right to compel the payment of such dividends. Following the declaration and payment of the common stock dividend, the holders of the preferred stock had a right to receive a dividend, which right existed prior to and independently of the redemption. In contrast, although the proceeds paid to the preferred shareholders also included an amount representing the accrued dividend for the first half of April, the shareholders had no right to receive such dividend prior to and independently of the redemption; GD became obligated to pay such amount only because of the redemption. The obligation to pay the dividend for the first quarter was met by the payment of $0.7265625 per share which was added to the price to be paid for the redemption of the preference stock and included as a part of the proceeds paid on redemption of such stock. Although such amount was paid in connection with the redemption, it was clearly not a part of the price paid for the stock. In this case, as in the liquidation cases, two transactions have occurred. *O. D. Bratton, supra; Houston Natural Gas Corporation, supra.* A prior legal obligation has been paid, and a distribution has been made in redemption of stock. The first, being a payment in satisfaction of a legal obligation to pay dividends, is taxable as ordinary income under section 301, and the second is taxable under section 302. Cf. *O. D. Bratton, supra; Houston Natural Gas Corporation, supra.*

In so holding, we have considered the petitioners' argument that under the rulings of the respondent, a portion of the proceeds of a

redemption is taxable as a dividend only when there has been a formal declaration of a dividend prior to the redemption. See Rev. Rul. 69–130, 1969–1 C.B. 93, superseding G.C.M. 5180, VII–2 C.B. 110 (1928); Rev. Rul. 69–131, 1969–1 C.B. 94, superseding S.M. 4181, IV–2 C.B. 12 (1925). These rulings state that when the proceeds of a redemption include a payment of a dividend which had been accrued but not declared, such payment may be taxable as a capital gain under section 302; but if a dividend has been declared, the part of the proceeds representing such dividend is taxable as a dividend under section 301. The rationale given for the different results is that when a dividend has been declared, the shareholder has a right to receive it without regard to the redemption. These rulings do not state that only when a dividend has been declared will a part of the proceeds be taxed as a dividend. They do not deal with a situation in which there is a legal obligation to pay a dividend on preferred stock, which obligation existed in the absence of a formal declaration. However, in view of the rationale given for the treatment of a declared dividend, there is surely no justification for the contention that in such a situation, the payment would be treated as a capital gain; indeed, a more reasonable view of the respondent's position is that whenever a part of the proceeds is paid in satisfaction of an obligation to pay a dividend, such part is taxable as a dividend, however the legal obligation may have arisen.

*Decisions will be entered under Rule 50.*