*223 OPINION.
Black:
At the time of the hearing in these proceedings the petitioner waived assignment of error (d) in the petition for the year 1937, pertaining to social security tax, and also waived assignments of error (c) and (d) in the petition for the year 1938, pertaining to a fire loss and involuntary conversion, respectively. In addition to the foregoing assignments of error disposed of by waiver, assignment of error (c) in the petition for the year 1937 is eliminated by virtue of paragraph 44 of the stipulation filed by the parties, wherein it is provided that for the year 1937 the petitioner is entitled to a deduction of $2,318.56, due to additional income taxes paid by the petitioner to the State of Kentucky. This leaves the following questions still in controversy:
*224 1. In the light of the facts in this case, did the respondent have any right to allocate to the two subsidiaries of the petitioner a portion of the so-called executive expenses incurred by tlffe petitioner, and thus deny to the petitioner a deduction for the amount of such expenses allocated to the subsidiaries? This point is involved in each of the years 1937 and 1938.
2. In the light of the facts in this case, did the respondent have any right to allocate to the two subsidiaries of the petitioner a portion of the national magazine advertising expense incurred by the petitioner, and thus deny to the petitioner a deduction for the amount of such expenses allocated to the subsidiaries ? This point is involved in each of the years 1937 and 1938.
3. Is the petitioner entitled to a bad debt deduction for the year 1938 in the amount of $80,810.56, ascertained to be worthless and charged off at the time of the liquidation of the New York subsidiary on October 1,1938?
4. Did the investment of the petitioner in the capital stock of the New York subsidiary in the amount of $1,000 become worthless in the year 1938, so that this amount is a proper deduction from income for that year?
We shall consider together questions (1) and (2).
The respondent has determined, under section 45 of the Eevenue Acts of 1936 and 1938, that a part of petitioner’s executive and advertising expenses should be allocated to its two subsidiaries, the New York and California companies, respectively. Section 45 is identical in both acts and is in the margin.[1] The respondent contends that, since he has exercised the discretionary power vested in him, petitioner has the burden of showing that such determination was purely arbitrary and not made under any of the situations prescribed by the statute as a proper foundation for allocation of the expenses in question, citing in support thereof Finance & Guaranty Co. v. Commissioner, 50 Fed. (2d) 1061; Asiatic Petroleum Co. (Delaware) Ltd., 31 B. T. A. 1152; affd., 79 Fed. (2d) 234; certiorari denied, 296 U. S. 664; and G. U. R. Co. v. Commissioner, 117 Fed. (2d) 187.
We think petitioner has met its burden with the exception hereinafter noted. The evidence introduced by petitioner shows that each company kept accurate records of its own expenses and that all of petitioner’s expenses, with the exception of compensation paid one of the officers and three of the office employees and the accounting expense *225 of auditing the books of the New York company, were for petitioner’s own exclusive benefit. The excepted expenses are as follows:
[[Image here]]
These expenses are a part of the total executive expenses set out in our findings for 1937 and 1938 of $193,895.48 and $174,846.85, respectively. Duncan testified that he obtained the licenses for the two subsidiaries and advised them on their accounting, invoicing, and credit memoranda; that Margaret Graf kept a perpetual inventory of the New York and California warehouse, which took about two days a month of her time; that Sproul spent about two-thirds of his time keeping the books of the two subsidiary companies; that Wroe now and then printed some stationery forms for them, but spent very little time in doing so; and that a part of the compensation paid Wolf & Co. was for auditing the books of the New York company.
The advertising expenses deducted by petitioner in its returns for 1937 and 1938 of $177,982.56 and $242,890.70, respectively, were for advertisements appearing in national magazines such as Life, Colliers, Time, and the New Yorker. No reference whatever was made in these advertisements to either the New York or California companies. Each subsidiary spent large sums for its own advertising. Petitioner, in addition to its two subsidiaries, had approximately 300 wholesale dealer representatives throughout the United States, none of which were in any way owned by the petitioner and none of which were located in the territory of the two subsidiaries.
Upon the evidence which we have in these proceedings we see no justification in the respondent’s determination that petitioner’s total executive and advertising expenses should be apportioned among the three companies upon the basis which he has used. Each corporation kept its own set of books, in which were recorded the business transactions of each company, and each company filed its own income tax returns. The executive and advertising expenses which the respondent has determined should be apportioned among the three companies in the proportion that the gross sales of each company bear to the total gross sales of all three companies were all the exclusive expenses of the petitioner, with the exception of some overlapping contained in the above amounts of $12,089.99 and $13,938.15 so-called executive expenses for the years 1937 and 1938, respectively. For the year 1937 this overlapping was more than taken care of by the flat charge *226 petitioner made against tbe two subsidiaries of $12,000, which amount petitioner included in its own gross income and it has not been questioned by the respondent. Petitioner made no similar charge for the year 1938. We think that it should have done so by allocating some reasonable amount for that purpose. The respondent has determined that the amount of these executive expenses which should be allocated to the subsidiaries for 1938 is $10,693.64. Inasmuch as the business of both subsidiaries decreased in 1938 and both were dissolved before the end of that year, we think that the amount of executive expenses which the respondent has allocated to the subsidiaries is excessive. We hold that $5,000 of these expenses should be allocated to the subsidiaries, of which $2,500 should be allocated to the California company and $2,500 to the New York company.
To summarize our holding on questions 1 and 2, it is this: None of petitioner’s advertising expenses should bo allocated to the subsidiaries, because this advertising expense was exclusively for petitioner’s brands of liquor and there is no reason why the subsidiaries should bear any part of this expense. They had their own large advertising expenses which properly appeared on their own books. The action of the respondent in making such an allocation was without justification. As to petitioner’s executive expenses, some of these were actually incurred for the benefit of the subsidiaries. We hold that the $12,000 of these expenses which petitioner allocated to the subsidiaries in 193? was ample to take care of the subsidiaries’ share of these expenses and that the allocation by the respondent of a greater amount was without justification. We further hold that $5,000 of these expenses should have been allocated by the petitioner to the subsidiaries for 1938 and that anything above that amount is excessive. Of the amount which the respondent has allocated for 1938, $5,000 is approved and the remainder is not sustained.
We shall now consider together questions (3) and (4). Under these issues petitioner contends that in 1938, when it dissolved the New York company and took over its net assets in part payment of the debt of $131,457.12 owed by the New York company to petitioner, the unpaid portion of the debt in the amount of $80,810.56 and petitioner’s investment of $1,000 in the capital stock of the New York company all became worthless; that, since petitioner ascertained the unpaid portion of the debt to be worthless and had charged it off during the taxable year 1938, it is entitled to a deduction therefor under section 23 (k) of the Revenue Act of 1938; and that it is also entitled to a deduction under section 23 (f) of $1,000 for the worthless stock. We agree with these contentions. Edward Katzinger Co., 44 B. T. A. 533; H. G. Hill Stores, Inc., 44 B. T. A. 1182. Cf. Glenn v. Courier-Journal Job Printing Co., 127 Fed. (2d) 820.
*227 The respondent contends that the claimed deductions are not allowable under section 112 (b) (6) of the Revenue Act of 1938, the material provisions of which are as follows:
(6) Pkoperty received by cobpobation on complete mquidation of another.— No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if—
*******
■(C) the distribution is by such other corporation in complete cancellation or redemption of all its stock * * *.
The respondent refers to the minutes of the special meeting of the petitioner’s board of directors held on August 30, 1938, and contends that petitioner has submitted no proof that it did not surrender its stock in the New York company “for cancellation in exchange for the assets of said New York Company” as provided in those minutes. Those minutes recite, among other things, that petitioner
* * * Glenmore Distilleries Company, the sole stockholder, surrender its stock in the said New York Company to said Company for cancellation in exchange for the assets of said New York Company, and that it assume the liabilities of said New Yoflc Company, * * * [Italics ours.]
The New York company at that time owed the petitioner $131,457.72, which was the balance due on a running account, and owed other outside debts of $4,935.01. The records of petitioner show that the net assets of the New York company were taken over by petitioner and used to pay the debts which the New York company owed to outsiders and the balance was applied in part payment for the debt the New York company owed petitioner. After this was done the New York company owned no assets which it could distribute in liquidation. Petitioner received no property from the New York company as a stockholder, and section 112 (b) (6) was not intended to cover the transfer of assets to a creditor. H. G. Hill Stores, Inc., supra.
The respondent also contends that petitioner’s investment in the capital stock of the New York company should be considered at not less than $41,000 instead of $1,000, on the ground that, since the inventory of the New York company was never less than $40,000, it would be unreasonable to assume that the value of such inventory should be considered as an account receivable due by the New York company to petitioner. We see no merit in this contention. The parties have stipulated that at the time the New York company was organized all of its capital stock “was subscribed for by petitioner by the payment of cash of $1,000.00.” There is no evidence that petitioner ever intended to pay in any more capital than the original $1,000. The running account with the New York company was bona *228 fide and was kept in the same manner as petitioner kept its other accounts receivable, and petitioner fully intended that the account would be paid in full.
We, therefore, upon the authorities cited above, decide questions (3) and (4) for the petitioner.

Decisions will he entered wider Rule 50.

 SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.
In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the united States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.