COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

SPAULDING BAKERIES INCORPORATED, Respondent.

No. 93, Docket 24725.

United States Court of Appeals Second Circuit.

Argued Jan. 17, 1958.

Decided Feb. 26, 1958.

694

·  Charles K. Rice, Asst. Atty. Gen., Lee
A. Jackson, Robert N. Anderson, David
O. Walter, Attorneys, Department of Jus-
tice, Washington, D. C., for petitioner.

Norris Darrell, Richard G. Powell, M.
Bernard Aidinoff, New York City (Sulli-
van & Cromwell, New York City, of coun-
sel), for respondent.

Before MEDINA and MOORE, Circuit
Judges, and GALSTON, District Judge.

GALSTON, District Judge.

The question involved is substantially
one of law, and of law only, for the facts
have been stipulated.  Basically, the ques-
tion presented involves an interpretation
of Section 112(b)(6) of the Internal Rev-
enue Code of 1939, 26 U.S.C.A. § 112(b)
(6).  The problem presented hinges upon
an investment which the respondent
made in the purchase over a period of
years of shares of the capital stock of
Hazleton Bakeries, Inc.

Hazleton Bakeries, Inc. (herein re-
ferred to as "Hazleton") was organized
in 1927 in Delaware, and its certificate
of incorporation authorized the issuance
of 3,000 shares of common stock without
par value, and 7,000 shares of preferred
stock, each share of the par value of $100.
On liquidation or dissolution, the holders
of the preferred stock were entitled to
receive the full par value of their stock
and all unpaid dividends accrued thereon
before any payment whatever was to be
made on the common stock.  The voting
power was vested exclusively in the com-
mon stock.  None of the common or pre-
ferred stock was issued originally to the
respondent.

In April 1930, respondent purchased
1,650 shares of the common stock of Ha-

zleton, and later acquired the balance of the 3,000 shares of common stock by purchases in January 1931 and January, 1933. The cost to the respondent of the entire common stock of Hazleton aggregated $335,592.69.

Respondent purchased 5,977 shares of preferred stock, which was the entire number of outstanding shares of said stock, during the years from 1933 through 1946 at an aggregate cost of $293,651.82.

On September 18, 1949, the Board of Directors of Hazleton resolved that the company be dissolved on December 1, 1950, and the officers of Hazleton were authorized to convey any real and personal property of Hazleton to the respondent in connection with this dissolution. There is no evidence in the record that the transfer of assets to the respondent on the dissolution was to be in complete cancellation or redemption of all of Hazleton's stock then outstanding.

Hazleton was formally dissolved on December 1, 1950, and on dissolution all of its assets were transferred to the respondent. These assets had a net book value of $267,677.31. The stipulation of facts recites that the fair market value of these assets was not greater than the book value.

Since the preferred stock outstanding and held by the respondent had a par val-

ue of $597,700, it is clear that the holders of the preferred stock, who were entitled to be paid the aforesaid value of assets of $267,677.31, found the par value not met.

The common stock certificates bear the notation written across their face in ink: "Corporation dissolved—December 1, 1950—W. W. Schmitt," whereas in contrast, thirteen of the fifteen preferred stock certificates bear the notation: "Cancelled—December 1, 1950—W. W. Schmitt."

Hazleton was a corporation affiliated with the respondent, though it must be understood that there was no merger or consolidation effected at any time between the respondent and Hazleton. In the respondent's income tax return respondent took a deduction from its gross income in the amount of $320,919.07 due to the fact that the common stock investment in Hazleton was a total loss. This deduction was taken pursuant to the provisions of Section 23(f)[1] and 23(g) (4)[2] of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(f), (g)(4). This deduction resulted in a net operating loss for 1950 and a net operating loss carryback to the calendar year 1949. The Commissioner disallowed this deduction on the ground that such loss was not to be recognized under the provisions of Section 112(b) (6)[3] of the Internal Revenue Code of 1939.

---

1. "§ 23. Deductions from gross income. "In computing net income there shall be allowed as deductions:

    \*  \*  \*  \*  \*

    "(f) Losses by corporations.—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

2. "§ 23. Deductions from gross income. "In computing net income there shall be allowed as deductions:

    \*  \*  \*  \*  \*

    "(g) Capital losses.

    \*  \*  \*  \*  \*

    "(4) Stock in affiliated corporation.— For the purposes of paragraph (2) stock in a corporation affiliated with the taxpayer shall not be deemed a capital asset. For the purposes of this paragraph a corporation shall be deemed to be affiliated with the taxpayer only if:

"(A) at least 95 per centum of each class of its stock is owned directly by the taxpayer; and

"(B) more than 90 per centum of the aggregate of its gross income for all taxable years has been from sources other than royalties, rents (except rents derived from rental of properties to employees of the company in the ordinary course of its operating business), dividends, interest (except interest received on deferred purchase price of operating assets sold), annuities, or gains from sales or exchanges of stocks and securities; and

"(C) the taxpayer is a domestic corporation."

3. "§ 112. Recognition of gain or loss.

    \*  \*  \*  \*  \*

    "(b) Exchanges Solely in Kind.—

    \*  \*  \*  \*  \*

The question presented to the Tax Court was whether Section 112(b)(6) prevented respondent from taking a loss deduction under Section 23(f) and Section 23(g)(4) due to the worthlessness of its common stock investment in Hazleton. Clearly, respondent would be entitled to this deduction if Section 112(b)(6) is inapplicable.

"(6) Property received by corporation on complete liquidation of another.—No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if—

"(A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of the plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property; and

"(B) no distribution under the liquidation was made before the first day of the first taxable year of the corporation beginning after December 31, 1935; and either

"(C) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock, shall be considered an adoption of a plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution; or

"(D) such distribution is one of a series of distributions by such other corporation in complete cancellation or redemption of all its stock in accordance with a plan of liquidation under which the transfer of all the property under

Respondent, before the Tax Court, asserted that the Commissioner, in applying Section 112(b)(6) had made no distinction between the preferred and the common stock. The Tax Court, in agreeing with respondent, stated:

"Here there was no payment or distribution to the parent after the payment of the preferred stock claim

the liquidation is to be completed within three years from the close of the taxable year during which is made the first of the series of distributions under the plan, except that if such transfer is not completed within such period, or if the taxpayer does not continue qualified under subparagraph (A) until the completion of such transfer, no distribution under the plan shall be considered a distribution in complete liquidation. If such transfer of all the property does not occur within the taxable year the Commissioner may require of the taxpayer such bond, or waiver of the statute of limitations on assessment and collection, or both, as he may deem necessary to insure, if the transfer of the property is not completed within such three-year period, or if the taxpayer does not continue qualified under subparagraph (A) until the completion of such transfer, the assessment and collection of all income, war-profits, and excess-profits taxes then imposed by law for such taxable year or subsequent taxable years, to the extent attributable to property so received. A distribution otherwise constituting a distribution in complete liquidation within the meaning of this paragraph shall not be considered as not constituting such a distribution merely because it does not constitute a distribution or liquidation within the meaning of the corporate law under which the distribution is made; and for the purposes of this paragraph a transfer of property of such other corporation to the taxpayer shall not be considered as not constituting a distribution (or one of a series of distributions) in complete cancellation or redemption of all the stock of such other corporation, merely because the carrying out of the plan involves (i) the transfer under the plan to the taxpayer by such other corporation of property, not attributable to shares owned by the taxpayer, upon an exchange described in paragraph (4) of this subsection, and (ii) the complete cancellation or redemption under the plan, as a result of exchanges described in paragraph (3) of this subsection, of the shares not owned by the taxpayer."

in liquidation. The preferred stock claim captured all of the assets. There was nothing left to distribute to the parent as a common stockholder in the subsidiary. We hold the parent received no distribution in liquidation on its common stock within the intendment of the statute. Petitioner merely received in liquidation, payment of a part of its preferred stock claim—a fact which the statute, in effect, states will be immaterial."

The respondent, it seems to us, argues with convincing force that the two classes of stock of Hazleton cannot be treated as though they were but one class, nor can the distribution in respect to the preferred stock be treated as though it were a distribution by Hazleton in respect to *all* its stock, all classes. It is convincingly argued as a matter of law, that there could be no distribution in respect to the common stock until the prior claim of the preferred stock had been satisfied.

■ On dissolution of Hazleton, the respective priorities of indebtedness over preferred and common stock and of preferred stock over common stock must be given full force and effect. That certainly is the rule in reorganizations in bankruptcy under Chapter 10, 11 U.S.C.A. § 501 et seq. See Central States Electric Corp. v. Austrian, 4 Cir., 183 F.2d 879, certiorari denied 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662; Petition of Portland Electric Power Co., 9 Cir., 162 F.2d 618, certiorari denied sub nom., Watson v. Portland Electric Power Co., 332 U.S. 837, 68 S.Ct. 217, 92 L.Ed. 410.

Both parties cite Otis & Co. v. Securities & Exchange Commission, 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511. That authority seems to favor the respondent in the following passage in 323 U.S. at page 634, 65 S.Ct. at page 488:

"Like the bankruptcy and reorganization statutes, the Public Utilities Holding Company Act [15 U.S.C.A. § 79 et seq.], in providing that plans for simplification be 'fair and equitable,' incorporates the principle of full priority in the treatment to be accorded various classes of security interests. This right to priority in assets which exists between creditors and stockholders, exists also between various classes of stockholders."

Portland Electric Power Co., supra, follows Otis, supra, applying the "fair and equitable" standard to controversies among stockholders, and holds that the courts must recognize the full priority "of senior stockholders."

■ The Tax Court pointed out that Section 112(b)(6) has been repeatedly held inapplicable where the creditor receiving all the assets of a liquidating subsidiary, instead of being an outside party, is also the parent stockholder. In such case, and the subsidiary being insolvent, the available net assets are applied to discharge the obligation of the subsidiary to the parent, and where no assets remain after the obligations are satisfied, there is no distribution as required by Section 112(b)(6). H. G. Hill Stores, Inc., 1941, 44 B.T.A. 1182, 1183; Northern Coal & Dock Co., 1949, 12 T.C. 42; Iron Fireman Mfg. Co., 1945, 5 T.C. 452, 461.

■ In addition to the foregoing, it should be noted that Section 112(b)(6) (C) requires for its application a distribution in complete cancellation or redemption *of all stock* of the dissolved corporation. Clearly, a distribution only in respect of the non-voting preferred stock is not a distribution in complete cancellation *of all the stock* required by the terms of the statute.

■ No help is afforded by a reading of the legislative reports in hearings before the Senate Committee on Finance on the Revenue Act of 1935, pages 170–171, 300–303 (1935) and the House Conference Report, H.Conf.Rep.No. 1885, 74th Cong., 1st Sess. (1935) pages 8–10. Judge Magruder, in Granite Trust Co. v. United States, 1 Cir., 238 F.2d 670, 675, had the following to say in that regard:

"The legislative history of § 112 (b)(6) * * * indicates that Con-

gress was primarily concerned with providing a means of facilitating the simplification of corporate structures pursuant to the general policy enunciated in the Public Utility Holding Company Act of 1935, 49 Stat. 803, 15 U.S.C.A. § 79 et seq. See Seidman's Legislative History of Federal Income Tax Laws 240–43, 1938; Helvering v. Credit Alliance Corp., 1942, 316 U.S. 107, 112, 62 S.Ct. 989, 86 L.Ed. 1307. This fact, while perhaps not conclusive as to the proper interpretation of § 112 (b)(6), nevertheless does lend a favorable background to the taxpayer's contention that the subsection, as a relief measure, was 'not designed as a strait jacket into which corporations should be forced at the penalty of forfeiture of losses on liquidation of subsidiaries.' "

The decision of the Tax Court is affirmed.