BRADDOCK LAND COMPANY, INC., ET AL.,[1] PETITIONERS v.
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3812–77—3814–77.     Filed December 3, 1980.

*Jules G. Korner III* and *John C. Hayes,* Jr., for the petitioners.
*Lawrence D. Garr,* for the respondent.

WILBUR, *Judge:* Respondent has determined the following deficiencies in petitioners' Federal income taxes:

| Docket No. | Petitioner(s) | Taxable period | Deficiency |
|---|---|---|---|
| 3812–77 | Braddock Land Co., Inc. | [1]1973 | $47,091.66 |
| 3813–77 | Rothwell J. Lillard and Anne E. Lillard | 1973 | 13,419.00 |
| 3814–77 | Loy H. Kelley and Ima A. Kelley | 1973 | 11,700.00 |

[1]Jan. 1, 1973, through Sept. 30, 1973.

These consolidated cases present the following issues for our decision:

(1) Whether the forgiveness of accrued salaries, bonuses, and interest by Mr. Lillard and Mr. Kelley when the corporation they owned was in the process of a section 337 liquidation should be disregarded as lacking a business purpose;[2]

(2) Whether the forgiveness resulted in the realization of income to the Braddock Land Corp., and whether Braddock may

---

[1]The cases of the following petitioners are consolidated herewith: Rothwell J. Lillard and Anne E. Lillard, docket No. 3813–77; Loy P. Kelley and Ima A. Kelley, docket No. 3814–77.

[2]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years at issue herein.

exclude any income realized pursuant to sections 108 and 1017; and

(3) Whether the act of forgiving the indebtedness constituted an exercise of dominion and control over the forgiven debts resulting in the realization of income by Braddock's shareholders, the individual petitioners herein.[3]

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

During the taxable year in issue, the individual petitioners were residents of Fairfax, Va., and filed their respective joint Federal income tax returns with the Director, Internal Revenue Service Center, Memphis, Tenn. At all times pertinent to this case, Braddock Land Co., Inc. (Braddock), was a Virginia corporation having its principal office and place of business located in Fairfax, Va. Braddock was on the accrual and calendar year basis of accounting and filed its final Federal corporate income tax return for the short period ending September 30, 1973, the year here in issue, with the District Director of Internal Revenue, Memphis, Tenn.

Braddock was organized on January 25, 1955, and, during its life, conducted a real estate development business in Fairfax County, Va., buying large tracts of land and subdividing them for resale. From the end of 1955 and until its liquidation and dissolution in 1973, its sole shareholders, officers, and directors were petitioners Rothwell J. Lillard and Anne E. Lillard, owning 50 and 25 shares, respectively, and petitioners Loy P. Kelley and Ima A. Kelley, also owning 50 and 25 shares, respectively. The two couples were close friends and enjoyed a good working relationship. During these years, Braddock accrued debts for

[3]Petitioners and respondent are in agreement that if the Court disregards the forgiveness or concludes there was an anticipatory assignment of income, and the deficiency is therefore sustained against the Lillards and Kelleys, there would be no deficiency owing by Braddock.

Petitioners and respondent are also in agreement that if the Court sustains the deficiency asserted against Braddock, the individual petitioners would be entitled to reduce their reported long-term capital gains by their share of the resulting overdistribution.

Finally, petitioners and respondent are in agreement that if the Court sustains the deficiency asserted against Braddock, in recomputing its tax liability for 1973, Braddock would be entitled to an additional amount as a deduction on account of any additional State income taxes that are incurred and paid as a result of the additional income.

salaries and bonuses owed to its officers as compensation which were credited to their accounts.

These amounts were paid only in part during the years that they were accrued, as Braddock had shortages of cash. Because of this shortage of cash for operating capital during these years, the individual petitioners from time to time made loans and advances to the corporation. These amounts, like those owing for salary and bonuses, were credited on Braddock's books to the accounts of the individual petitioners and were repaid periodically. Braddock accrued interest on the unpaid balances of salaries and bonuses in each year and on the unpaid balances of loans and advances received from its shareholders. Braddock, as an accrual basis taxpayer, currently deducted these items from income at the time they were deemed owing. Only the amounts actually paid to the Lillards and Kelleys were reported by them as income in the years the payments were received.

The last year for which salaries or bonuses were accrued by Braddock was 1970 for Mr. Lillard, and 1972 for Mr. Kelley. On December 31, 1972, the total amount owed by Braddock for salaries, bonuses, and interest was $131,141.12—$63,224.66 to Mr. Lillard and $67,916.46 to Mr. Kelley. At this time, they were owed principal on two loans as well, one of which was secured. In late December 1972, the principal amount on the loans was apparently paid.

On June 27, 1972, Braddock adopted a plan of liquidation under the provisions of section 337. In the ensuing 12-month period, pursuant to the plan of liquidation, Braddock's debts, other than $102,545.87 of the amounts accrued as salaries, bonuses, and interest, were paid; its assets were sold (in part); and complete distribution in liquidation was accomplished under section 337.

In early 1973, the Lillards and Kelleys apparently realized that the corporation was not going to have sufficient cash, after paying debts to third party creditors, to pay them cash for the balances owed them. On or about January 10, 1973, they agreed to "forgive" Braddock's debt to them in an amount equal to what they understood was the remaining unrecovered cost basis of the assets owned by the corporation at that time. After consulting with Braddock's accountant and allocating the "forgiveness" as equally as possible, $51,405.89 of the amount owing

was "forgiven" by Mr. Lillard, and $51,139.98 was "forgiven" by Mr. Kelley, totaling $102,545.87[4] of the $131,141.12 owed to them by Braddock.

The remaining balance owed them ($28,595.25) was not "forgiven." In 1973, Braddock paid the remaining balance of $28,595.25 ($11,818.77 to Mr. Lillard and $16,776.48 to Mr. Kelley). These amounts were reported by them in their respective joint Federal income tax returns for 1973 as ordinary income. These amounts were equal to the interest Braddock accrued (and deducted) on notes secured by a first trust.

Braddock did not report any income for its short taxable year ending September 30, 1973. Braddock did, however, file a Form 982 with its final return, pursuant to sections 108 and 1017, which showed a decrease in Braddock's basis in various properties of $96,963.96.[5] The adjustment was shown as follows:

| Description of property | Basis before consent | Basis after consent | Amount excluded |
|---|---|---|---|
| Notes receivable | $21,300.10 | --- | $21,300.10 |
| Tractor | 1,774.62 | --- | 1,774.62 |
| Land costs | 108,415.18 | $34,526.54 | 73,889.24 |

In addition to that part of the debt paid to Mr. Lillard and Mr. Kelley by Braddock, the Lillards and Kelleys each reported receiving a liquidating distribution of $160,402 in June of 1973, partly in cash and partly in kind. This amount purportedly represented their shares of the entire net assets of Braddock distributed in liquidation in redemption of their stock in Braddock. They reported such distribution in their respective joint Federal income tax returns for 1973, characterizing the resulting gain as long-term capital gain.

Braddock was not insolvent at any time during the taxable year 1973. As of January 1, 1973, just prior to the "forgiveness" of the debt owed to its shareholders, Braddock had cash of $51,697.50, trade notes and accounts receivable of $42,032.01, and

[4]The record does not reveal how this figure was arrived at.

[5]Petitioners' accountant explained at trial the discrepancy between the $96,963.96 exclusion shown on Form 982 and the $102,545.87 "forgiveness" by the Lillards and Kelleys as an error. It is unclear why, if the goal was to forgive the debt in an amount equal to the unrecovered basis in the corporation's assets, a basis of $34,526.54 was left remaining in the land.

land and depreciable property with net book values of $106,936.85 and $1,994.62, respectively.[6] Braddock's liabilities, other than amounts due to the Lillards and Kelleys totaled $6,897.49.

Assets available for distribution to the shareholders upon final dissolution totaled $320,402, including a note receivable from R & L Associates, Inc., in the amount of $188,103.40, which represented partial payment for approximately 49 acres of land sold on February 26, 1973. Prior to January 10, 1973, the Lillards and Kelleys were aware that this transfer would take place.

In the statutory notice herein, respondent determined that the shareholders' forgiveness of Braddock's obligation to them constituted gross income to the corporation and that the provisions of section 108(a) are inapplicable. Respondent also determined that, of the totals reported as liquidating dividends ($160,402 to each couple), $51,406 represented payment for accrued salaries, bonuses, and interest to the Lillards, and $51,140 represented similar payment to the Kelleys.

## OPINION

Braddock was organized in 1955; its sole shareholders, officers, and directors were the individual petitioners herein. Mr. Lillard and Mr. Kelley each owned 50 shares of Braddock's stock, and their wives each owned 25 shares. The Lillards and the Kelleys were the only stockholders.

From time to time, Braddock accrued and deducted,[7] on its Federal income tax returns, due but unpaid salaries, bonuses, and interest which it owed to Mr. Lillard and Mr. Kelley, as officers of the corporation.

On June 27, 1972, Braddock adopted a plan of complete liquidation under section 337. On or about January 10, 1973, Mr. Lillard and Mr. Kelley "forgave" part of the debt owed to them

---

[6] The cash on hand is based on the testimony of Braddock's accountant and a request for a finding of fact by respondent not objected to by petitioner. However, both the balance sheet of Braddock as of Dec. 31, 1972, and the 1973 income tax return show cash of $65,470.53.

[7] These deductions were not disallowed under sec. 267(a)(2) since neither Mr. Kelley nor Mr. Lillard, even with the stock of their respective wives being attributed to them under sec. 267(b)(1), owned *more* than 50 percent of the outstanding stock of Braddock as required by secs. 267(a)(2)(C) and 267(b)(2).

by Braddock. Complete distribution in liquidation was accomplished under section 337 by June of 1973.

Respondent urges that the forgiveness by petitioners Rothwell Lillard and Loy Kelley of accrued salaries, bonuses, and interest owed to them by Braddock lacked a business purpose and economic substance, and that the forgiveness is simply a sham that should be disregarded for tax purposes. Petitioners argue that the forgiveness originated in significant part from a desire to avoid a forced sale of assets to generate cash sufficient to liquidate the corporate obligations. Our agreement with respondent on this issue, which is dispositive, makes it unnecessary to consider the other alternative issues raised.

The leading case supporting the existence of a "sham transaction" theory is *Gregory v. Helvering*, 293 U.S. 465 (1935). There, a reorganization complying with all of the formal statutory requirements was disregarded for Federal income tax purposes because no valid economic purpose existed for the creation and immediate liquidation of the transferee corporation. The transaction was simply an attempt to convert ordinary dividend income into capital gains. The Court's decision was based not on any tax-avoidance motive of the taxpayer, but rather on the lack of a business purpose for the transaction which the statutory scheme contemplated:

The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. *United States v. Isham*, 17 Wall. 496, 506 [21 L. Ed. 728]; *Superior Oil Co. v. Mississippi*, 280 U.S. 390, 395–6 [50 S. Ct. 169, 74 L. Ed. 504]; *Jones v. Helvering*, 63 App. D.C. 204; 71 F.(2d) 214, 217. But the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended. * * * [*Gregory v. Helvering, supra* at 469.]

The *Gregory* doctrine is not limited to the field of corporate reorganizations, but has a much wider scope. *Commissioner v. Transport Trading & Terminal Corp.* 176 F.2d 570 (2d Cir. 1949), cert. denied 338 U.S. 955 (1950). It applies to the Federal taxing statutes generally. *Weller v. Commissioner*, 270 F.2d 294 (3d Cir. 1959), cert. denied 364 U.S. 908 (1960). See, for example, *Knetsch v. United States*, 364 U.S. 361 (1960) (interest deduction); *Higgens v. Smith*, 308 U.S. 473 (1939) (loss deduction on sale to wholly owned corporation); *David's Specialty Shops v. Johnson*, 131 F. Supp. 458 (S.D. N.Y. 1955) (affiliated corporations); *Weyl-Zuckerman & Co. v. Commissioner*, 233 F.2d 214

(9th Cir. 1956) (mineral rights transferred to a wholly owned subsidiary).

In the instant case, we must examine the "cancellation" of the corporation's indebtedness to its major shareholders in light of all the attendant circumstances to determine whether the purported "forgiveness" should be given effect for the purposes of Federal tax law. In June of 1972, Braddock adopted a plan of liquidation under the provisions of section 337(a).[8] To receive the benefits of that section, all of the assets of the corporation, other than those needed to meet claims, must be distributed in complete liquidation within 12 months from the date of the adoption of the plan. Thus, on January 10, 1973, the date of the forgiveness, it was known that the corporation would cease to exist within 6 months. That the parties desired the benefits of section 337 cannot be doubted in view of their election of that section and the sale on February 23, 1973, of a large parcel of land, for a realized gain in excess of $79,000,[9] which sale was known to the parties at the time the debt was cancelled. Clearly, the cancellation of the debt was not designed to aid or assist the company financially, to increase its ability to borrow money, or to facilitate continuance of its business, as the company had no future beyond June.

Although the company was at no time insolvent, debts were owed not only to the shareholder-creditors, but also to third parties. Since its assets were primarily in receivables and land, decisions had to be made concerning the order and form of payment. It is interesting to note in examining the purpose of

---

[8] SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE. —If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

[9] The amount realized on the sale was in excess of $188,103.40 (the note received in partial payment). Braddock's basis in all of the land it owned, according to Braddock's 1973 Federal income tax return, was $106,936.85 on Jan. 1, 1973 ($108,415.78 on Form 982), and $0 on Sept. 30, 1973. From the fact that the sale was known to the parties on the date of the alleged forgiveness, we infer that the $108,415.78 figure must include the basis of this land. There was thus a potential recognition of gain of at least $79,687.62, allocating the entire basis of all the land to this sale, limiting the amount realized to the notes received, and assuming the land sold was purchased prior to Jan. 1, 1973.

the transactions before us, that one of the first decisions made was to repay to Mr. Lillard and Mr. Kelley the principal on two loans they made to Braddock in December of 1972.

As of January 1, 1973, the company owed $6,897.49 to its outside creditors. While it was impossible to estimate the exact amount of liabilities which would be incurred during 1973, we find it difficult to believe that taxes and other items could reasonably have been expected to exceed $44,800.01 ($51,697.50 cash on hand minus $6,897.49 accrued liabilities owed to third parties), particularly in light of the election of the section 337 nonrecognition provision. The outside creditors could thus have been paid in full in cash had Rothwell Lillard and Loy Kelley been willing to accept other forms of payment in their capacity as creditors. As pointed out by respondent in his brief, it would be difficult to understand any objection by petitioners as creditors to this payment in kind, since almost all of the liquidation proceeds they received as shareholders were in notes and land.

Petitioners argue that the debts might have exceeded available cash, thus requiring a forced sale of property. But the forgiveness did nothing to generate additional cash; it simply eliminated the company debt to the creditor-shareholders that could have been paid, even were there no forgiveness, if Rothwell Lillard and Loy Kelley as creditors were willing to accept payment in kind rather than in cash. As the company was not insolvent, there would even have been some assets remaining for distribution to the shareholders upon liquidation.

In sum and substance, canceling the indebtedness at midstream in a routine liquidation was simply an attempt by the individual taxpayers to receive the proceeds as shareholders (taxable as capital gains) rather than as creditors (taxable at ordinary income). It served no other purpose, for the cancellation did not alter in any significant way the plan of liquidation contemplated 6 months earlier, nor the form of the liquidation 6 months later. Everything, including the timing and form of the final distributions to the creditor-shareholders, occurred essentially as it would have occurred without the "forgiveness." "If we stood at the top of the world and looked down on this transaction" (see *Mathews v. Commissioner*, 520 F.2d 323, 325 (5th Cir. 1975)), we would see events unfolding during the year of liquidation about as they were contemplated when the plan

was adopted. Under the circumstances before us, the cancellation of the indebtedness was simply a sham, without economic substance, and must be disregarded for Federal tax purposes.

We now focus our attention on the debt owed by the corporation to the shareholder-creditors on liquidation. Following a long line of cases, we hold that to the extent of the outstanding debt owed to Braddock's shareholders as creditors of the corporation, the distribution was not a liquidating distribution but was merely a payment of the obligation giving rise to ordinary income.

We have held in the context of the liquidation of a subsidiary corporation[10] that the liquidation provisions only encompass distributions of assets to stockholders in cancellation and redemption of their stock (i.e., a return to them in whole or in part of their capital investment in the corporation), *H. G. Hill Stores, Inc. v. Commissioner*, 44 B.T.A. 1182 (1941); and do not include distributions made to a creditor for the discharge of outstanding obligations. *Northern Coal & Dock Co. v. Commissioner*, 12 T.C. 42 (1949). This rule has also been held to apply in a section 331 liquidation (*Jorden v. Commissioner*, 11 T.C. 914 (1948); *Bratton v. Commissioner*, 31 T.C. 891 (1959), affd. per curiam 283 F.2d 257 (6th Cir. 1960), cert. denied 366 U.S. 911 (1961)), despite the differences in language between sections 331 and 332. We believe this is fundamental to the concept of the liquidation provisions as a whole: that a shareholder will only receive sale or exchange treatment as a liquidating distribution to the extent that he receives something of value in respect of the cancellation or redemption of his stock.

We believe that our characterization of these transactions is consistent with the law of corporations. It is a general rule of law that in distributing the assets of a dissolved corporation, the property must first be used to satisfy the debts and liabilities of the corporation before any distribution can be made to the shareholders. The creditors have a prior right to the assets for the satisfaction of their claims. 19 Am. Jur. 2d secs. 1686, 1692 (1965); 16A W. Fletcher, Cyclopedia of the Law of Private Corporations, sec. 8219 (perm. ed. 1979). Virginia (where Brad-

---

[10]See sec. 112(b)(6), I.R.C. 1939, and sec. 332, I.R.C. 1954, which are essentially identical for present purposes. It should be noted that sec. 332, unlike sec. 331, contains in (b)(2) the language "in complete cancellation or redemption of all its stock."

dock was incorporated) follows this rule by providing that the corporation must pay, satisfy, and discharge its liabilities and obligations, and only after this is done may the remainder of the assets be distributed to the shareholders. Va. Code sec. 13.1–84(b); *Marshall v. Fredericksburg Lumber Co.*, 162 Va. 136, 173 S.E. 553, 557 (1934).

We have also long recognized that amounts paid to a shareholder-creditor upon liquidation must first be applied to satisfy any outstanding indebtedness, and only the remainder of the assets distributed constitutes a distribution in liquidation in exchange for his stock. *Houston Natural Gas Corp. v. Commissioner*, 9 T.C. 570, 574 (1947), affd. 173 F.2d 461 (5th Cir. 1949). See also *Spaulding Bakeries, Inc. v. Commissioner*, 27 T.C. 684, 687 (1957), affd. 252 F.2d 693 (2d Cir. 1958); *Menzies, Inc. v. Commissioner*, 34 B.T.A. 163, 168 (1936). In circumstances where the amount distributed is less than the debt obligations of the corporation, so that no amount is available for distribution to the shareholders on account of their stock, it has been held that no liquidating distribution was made, thus rendering the liquidation provisions totally inapplicable. *Jorden v. Commissioner*, *supra* at 922; *Iron Fireman Manufacturing Co. v. Commissioner*, 5 T.C. 452, 462 (1945); *Aldrich v. Commissioner*, 1 T.C. 602 (1943); *Glenmore Distilleries Co. v. Commissioner*, 47 B.T.A. 213, 227 (1942); *H. G. Hill Stores, Inc. v. Commissioner*, *supra*. Similarly, where, as in the present case, a corporation is indebted to a shareholder-creditor for services rendered or for interest, amounts distributed by the corporation when it liquidates are taxable at ordinary income rates to the extent of the amount of the debt, and the excess is taxable at capital gains rates to the extent it exceeds their basis in the stock. *Bratton v. Commissioner*, 31 T.C. 891, 901 (1959), affd. per curiam 283 F.2d 257 (6th Cir. 1960), cert. denied 366 U.S. 911 (1961); *Crown v. Commissioner*, 58 T.C. 825, 834 (1972), affd. in an unpublished opinion 487 F. 2d 1404 (7th Cir. 1973).

The Kelleys and the Lillards each received a distribution of $160,402 in June of 1973. Of this amount, the first $51,405.89 paid to the Lillards and the first $51,139.98[11] paid to the Kelleys are to be regarded as payments by the corporation of the

---

[11]These are only the amounts purportedly forgiven, not the entire debt owing on Dec. 31, 1972. The remainder of the debts owed to the parties were paid by Braddock in separate

accrued salary, bonuses, and interest due to each, and should have been reported by them as ordinary income. The difference between these amounts and the $160,402 distributions was properly reportable as capital gains to the extent their basis in the Braddock stock was exceeded. Sec. 331(a)(1).

*Decision will be entered for the petitioner in docket No. 3812–77.*

*Decisions will be entered for the respondent in docket Nos. 3813–77 and 3814–77.*

---

transactions and were properly reported as ordinary income by the Lillards and Kelleys on their respective Federal income tax returns.