LAWRENCE C. NELSON and REGINA L. NELSON, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Nelson v. Commissioner
Docket Nos. 26015-81, 8080-82, 1521-83, 1522-83.
United States Tax Court
T.C. Memo 1984-465; 1984 Tax Ct. Memo LEXIS 209; 48 T.C.M. (CCH) 998; T.C.M. (RIA) 84465; August 30, 1984. Robert T. Andersen, Jr., for the petitioners. Howard Rosenblatt, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: In these consolidated cases respondent determined deficiencies in and an addition to petitioners' Federal income tax as follows: Sec. 6653(a) [2]
Petitioners
Year
Deficiency
Addition to Tax
Lawrence C. Nelson and
1975
$2,132
Regina L. Nelson
1976
20,092
1977
15,389
David R. Johnson and
1977
60,411
$3,021
Odette S. Johnson
John L. May and
1977
24,964
Sonia May
John L. May and
1976
16,710
Marianne Miller
*210 The only issue [3] is whether petitioners are entitled to ordinary loss deductions in connection with certain stock issued by a corporation in exchange for cancellation of indebtedness. The facts have been fully stipulated for the sole purpose of determining the issue severed for decision and are so found. All petitioners resided in Corona, Calif., when they filed their petitions herein. Accounting Systems and Procedures, Inc. (ASAP or the corporation) was organized in 1971 under the laws of the State of California. ASAP was engaged in the business of developing computer programs or "software" for use in property management. Petitioners David R. Johnson (Johnson) and Lawrence C. Nelson (Nelson) were directors, shareholders and officers of ASAP, and Fred Hughes (Hughes) was president of ASAP at all relevant times. The original articles of incorporation authorized 48,500 shares of stock. Hughes received *211 27,000 shares as consideration for ASAP's use of his software pursuant to a licensing agreement. The remaining 21,500 shares were issued for $2 each. As of December 1, 1977, Johnson held 7,500 shares of ASAP, Nelson held 4,000 shares, and Hughes held 27,000 shares. Petitioner John May (May) held no shares. From November 1971 to April 1974 Johnson advanced to ASAP approximately $40,000 evidenced by promissory notes of which $15,000 was ultimately repaid. Johnson made additional loans to ASAP totalling $9,900 from March 1974 to September 1975. He also paid $27,647.17 to Bank of America as co-guarantor with Nelson of ASAP's obligations. Nelson and May, through a partnership entitled "Angina Leasing," loaned ASAP $74,518 from 1971 through 1977, incouding payments totalling $26,855.93 in satisfaction of Nelson's portion of the guarantee agreement with Bank of America. No interest was ever paid or accrued by ASAP with respect to these loans and, except for the $15,000 paid to Johnson, no repayment was made, nor was there a demand by petitioners for repayment. From 1971 through 1976, primarily as a result of the efforts of Hughes, ASAP developed and marketed a software system for *212 property management. In early 1977 it was decided that ASAP would purchase a computer to run its software package and would market both the computer and the software together. In order to provide additional capital for such expansion, in May 1977 ASAP adopted a plan to issue additional stock in accordance with the provisions of section 1244. Under the plan ASAP would issue stock to petitioners in exchange for cancellation of debts owed them by ASAP. This exchange of debt for equity was intended to improve the balance sheet of the corporation and make it appear more desirable to outside investors. On August 5, 1977, in preparation for the issuance of stock in accordance with the section 1244 stock plan, the corporation filed amended Articles of Incorporation in order to increase the number of its authorized shares. Thereafter, however, the Board of Directors (herein the board) decided to delay filing with the California Commissioner of Corporations an application for a permit to issue additional stock until such time as the corporation had completed its investigation of the various aspects of purchasing a computer and had determined its specific financing needs. In October 1977 *213 ASAP entered into a contract to purchase a computer from Data General for approximately $150,000, but, consistent with the terms of the agreement, ASAP cancelled the purchase order on November 7, 1977. On December 1, 1977, principally due to the board's failure to resolve an employment dispute with Hughes, ASAP's key employee, the board voted to wind down the affairs of the corporation. In addition, the board resolved (1) that the corporation's assets be transferred to Hughes in exchange for its indebtedness to him and (2) that steps be taken to issue stock in accordance with the section 1244 stock plan. Consistent with these resolutions, by means of an assignment dated December 1, 1977, ASAP transferred its assets to Hughes and ASAP was thereby rendered valueless. Thereafter ASAP conducted no business and generated no corporate revenue. Despite the fact that ASAP was going out of business, the corporation continued with its plan to issue stock pursuant to section 1244. After obtaining a permit to issue stock, on December 27, 1977, ASAP issued 74,518 shares of stock to Nelson in exchange for the cancellation of its indebtedness to Angina Leasing [4] and 53,315 shares of stock *214 to Johnson in exchange for its indebtedness to him. On their 1977 returns, petitioners reported the following ordinary losses under section 1244: Lawrence C. and Regina L. Nelson, $37,259; David R. and Odette S. Johnson, $50,000; and John L. and Sonia May, $37,259. In his notices of deficiency respondent disallowed the ordinary loss deductions and allowed them as capital losses. [5]
The sole issue for decision is whether petitioners are entitled to ordinary loss deductions in connection with the stock issued by ASAP on December 27, 1977. Section 1244 provides that, subject to certain *215 conditions and limitations, a loss on the sale or exchange (including a transaction treated as a sale or exchange) of "section 1244 stock" which would otherwise be treated as a loss from the sale or exchange of a capital asset shall be treated as an ordinary loss. See sec. 1.1244(a)-1, Income Tax Regs. The parties have stipulated that for purposes of determining the issue herein ASAP is deemed to have complied with the technical requirements of section 1244(c) and that the funds advanced by petitioners constituted debt, not equity. [6]
Respondent argues that petitioners *216 are not entitled to ordinary loss deductions under section 1244 because the only purpose of the stock issuance was tax avoidance. [7] Petitioners argue, however, that although the stock was not formally issued until after the board had resolved to wind down the affairs of the corporation, their stock nevertheless qualifies as section 1244 stock since the substance of the transaction herein was the issuance of stock in exchange for cancellation of indebtedness, thus enhancing ASAP's ability to raise capital for its expansion. Petitioners contend, therefore, that they are entitled to ordinary loss deductions. For the following reasons, we agree with respondent. It is well established that a transaction entered into solely for the purpose of tax avoidance, which has no economic or business objective is without effect for Federal income tax purposes. *217 Frank Lyon Co. v. United States,435 U.S. 561 (1978); Knetsch v. United States,364 U.S. 361 (1960). See Rice's Toyota World, Inc. v. Commissioner,81 T.C. 184 (1983), on appeal (4th Cir., Feb. 27, 1984). In the leading case, Gregory v. Helvering,293 U.S. 465 (1935), a reorganization which otherwise met all of the formal statutory requirements was disregarded for Federal income tax purposes because no valid business purpose existed for the creation and immediate liquidation of the transferee corporation. Focusing on the absence of business purpose, the Court ruled that the transaction was merely an attempt to convert ordinary income into capital gain. Although generally the taxpayer is free to structure business transactions in such a way as to minimize taxes, such transactions will not be given effect for Federal income tax purposes where there is no economic or business purpose for the transaction. Gregory v. Helvering,supra, at 469; Rice's Toyota World, Inc. v. Commissioner,supra, and cases cited therein. The principles enunciated in Gregory v. Helvering *218 are not limited to the field of corporate reorganizations, but are applicable to Federal taxing statutes generally. Braddock Land Co. v. Commissioner,75 T.C. 324, 329 (1980), and cases cited therein. This Court considered the element of business purpose in the context of section 1244 in Morgan v. Commissioner,46 T.C. 878 (1966), wherein the taxpayers purportedly purchased section 1244 stock for an amount sufficient to pay the corporation's debts after the board of directors had voted to liquidate the corporation. This Court did not dispute the fact that funds were transferred to the corporation but, nevertheless, considered the economic reality of the transaction and, in effect, found no business purpose therefor. The Court noted that section 1244 was designed to encourage investments in small businesses to permit them to carry on business, not to provide an ordinary loss deduction after the corporation has ceased doing business. In denying ordinary loss treatment on the shares, the Court stated: [W]e will not accept the argument that [the money] was paid for stock which was admittedly worthless at the time of issuance and which would *219 represent an additional interest in a corporation which was insolvent and was already in the process of dissolution. The only reason this would be done would be to create a tax deduction. We cannot agree that this payment resulted in a loss on section 1244 stock, whether or not the stock purportedly issued technically qualified as section 1244 stock; and we so hold. [Morgan v. Commissioner,supra at 893.] In Hill v. Commissioner,51 T.C. 621 (1969), this Court again denied ordinary loss treatment under section 1244 notwithstanding taxpayers' compliance with the literal requirements of that section. The Court therein noted that the purported section 1244 stock was acquired after the corporation had ceased doing business and found, therefore, that in paying the corporation for such stock taxpayers were not investing in the business of the corporation. See also Hollenbeck v. Commissioner,50 T.C. 740 (1968), affd. 422 F.2d 2 (9th Cir. 1970). In the instant case, although the formal requirements of section 1244 were met, it is significant that the exchange of debt for stock occurred after the board had *220 voted to dissolve the corporation, after ASAP had altogether ceased doing business, and after ASAP had virtually no assets. We can think of no reason other than tax avoidance for such a transaction. After the issuance of the shares ASAP made no further efforts to expand or to resume carrying on business. There was no business or economic purpose for the exchange other than petitioners' attempt to convert a capital loss into an ordinary loss deduction. Therefore, we conclude that petitioners are not entitled to ordinary loss deductions in connection with the stock acquired in December 1977. [8]
*221 For the foregoing reasons we find for respondent on this issue. An appropriate order will be issued.
Footnotes
1. Cases of the following petitioners are consolidated herewith: David R. Johnson and Odette S. Johnson, docket No. 8080-82; John L. May and Sonia May, docket No. 1521-83; and John L. May and Marianne Miller (formerly Marianne May), docket No. 1522-83.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. ↩
3. The issue herein has been severed for determination without trial. Further proceedings may be necessary depending upon our decision herein.↩
4. Although the shares were issued in Nelson's name, by oral partnership agreement Nelson and May had agreed that each would own a 50 percent beneficial interest in such shares. Thus, Nelson and May each deducted $37,259 on his 1977 individual income tax return.↩
5. The record is unclear as to the manner of disposition of the stock which caused the losses herein. We do not need to make that finding, however, since respondent has conceded that petitioners are entitled to capital loss deductions.↩
6. One of the requirements under sec. 1244 is that stock be issued "for money or other property (other than stock and securities)." Sec. 1244(c)(1)(D). Respondent's stipulation to the characterization of petitioners' advances as debt precludes further inquiry regarding their nature and the application of the debt/equity analysis utilized by this Court in similar cases. See e.g. Hollenbeck v. Commissioner,50 T.C. 740 (1968), affd. 422 F.2d 2↩ (9th Cir. 1970).
7. Alternatively, respondent contends that the stock was not issued within the spirit and purpose of sec. 1244↩ and, therefore, should not qualify thereunder. Based on our determination of the issue presented, we need not consider this argument.
8. Petitioners alternatively argue that they became holders of the shares either when ASAP adopted the sec. 1244 stock plan in May 1977 or at some time before the corporation contracted to purchase the computer. They contend, therefore, that the stock was issued before the corporation's December 1, 1977, vote to dissolve, while ASAP was still viable. Stock is normally considered issued when it is paid for, without regard to the formal issuance or delivery of the stock certificates. Morgan v. Commissioner,46 T.C. 878, 890↩ (1966) and cases cited therein. Here the shares were issued to petitioners in exchange for cancellation of ASAP's indebtedness to them. Although petitioners maintain that the stock was issued before December 1, 1977, ASAP's November 30, 1977, balance sheet shows notes payable to Nelson and Johnson for $74,518 and $53,315, respectively. Thus, the evidence shows no cancellation of ASAP's indebtedness to petitioners before December 1, 1977, and the issuance of the shares, therefore, did not occur until after ASAP had voted to dissolve. Thus, we find no merit in petitioners' alternative contention.